UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| ICON AMAZING, LLC | * CIVIL ACTION |
| | * |
| VERSUS | * NO. |
| | * |
| AMAZING SHIPPING LTD., GEDEN HOLDINGS, LTD. | * SECTION "" |
| | * |
| | * MAGISTRATE ( ) |
| | * |

## VERIFIED COMPLAINT

Plaintiff, ICON Amazing, LLC, (hereinafter "Plaintiff" or "ICON"), with full reservation of its right to proceed to arbitration, through undersigned counsel and for its Verified Complaint against the Defendants, Amazing Shipping, Ltd. ("Amazing Shipping") and Geden Holdings, Ltd. ("Geden Holdings", collectively with Amazing Shipping, "Defendants"), alleges, upon information and belief, as follows:

1.  This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure, 28 United States Code § 1333 and Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.

2. At all material times to this action, the M/V AMAZING (hereinafter, the "AMAZING" or the "Vessel") was and is an ocean going dry bulk carrier of approximately 33,044 gross tons, bearing IMO No. 9456331, and flying under the flag of Malta.

3. At all material times to this action, Plaintiff was a limited liability company organized and operating pursuant to the laws of the Republic of the Marshall Islands, and was the Owner of the AMAZING.

4. At all material times to this action, Defendant Amazing Shipping was and is a foreign corporation or other business entity organized and existing under foreign law with an office and place of business in Malta and Bareboat Charterered the AMAZING from plaintiff.

5. At all material times to this action, Defendant Geden Holdings was and is a foreign corporation or other business entity organized and operating pursuant to the laws of Malta and was the guarantor of the obligations and performance of Defendant Amazing Shipping.

6. On or about September 29, 2010, ICON and Amazing Shipping entered into a Memorandum of Agreement (the "MOA") regarding the sale and immediate charter back of the AMAZING. *See* Amazing MOA, attached as Exhibit A. Pursuant to terms of the MOA, Amazing Shipping agreed to sell, and ICON agreed to purchase, the AMAZING for the price of $33,500,000.00. Amazing Shipping further agreed to immediately charter the Vessel back from ICON under a BIMCO bareboat charter party executed simultaneously with the MOA.

7. Pursuant to the parties' agreement under the MOA, on September 29, 2010, ICON and Amazing Shipping executed a Bimco standard form bareboat charter party for the AMAZING (hereinafter, the "Amazing Charter Party"), under which ICON chartered the

AMAZING to Amazing Shipping for a period of up to seven (7) years. *See* Bimco Standard Bareboat Charter Party dated September 29, 2010, attached as Exhibit B. The charter party granted Amazing Shipping the right to exercise a purchase option to the Vessel on each anniversary of the commencement of the bareboat charter beginning with the fourth anniversary, and obligates Amazing Shipping to purchase the vessel for the fixed price of $21,500,000.00 at the completion of seven (7) years as bareboat charterer, if it has not exercised the purchase option earlier.

8. Further pursuant to the terms of the Amazing Charter Party, commencing with the delivery of the AMAZING to Amazing Shipping, and continuing until Amazing Shipping's repurchase of the Vessel upon the exercise of its purchase option or the termination of the Amazing Charter Party, Amazing Shipping is obligated to pay to ICON monthly bareboat charter hire in the amount of $13,500.00 per day. *See* Amazing Charter Party, attached as Exhibit B, Clause 34. Amazing Shipping's charter hire payments are due in advance at monthly intervals beginning from the date of the Vessel's delivery.

9. In addition to the foregoing obligations under the Amazing Charter Party, Amazing Shipping further agreed that if the fair market value of the Vessel were to fall below 125% of the amount advanced to ICON for the purpose of purchasing the vessel, Amazing Shipping would either (i) provide additional security to ICON to ICON's satisfaction or (ii) pay to ICON additional charter hire. *See* Amazing Charter Party, attached as Exhibit B, ¶ 40(c).

10. On or about October 1, 2010, ICON paid the purchase price of $33,500,000.00 to Amazing Shipping and received title to the AMAZING. As ICON and Amazing Shipping had agreed, ICON (as owner) simultaneously delivered the AMAZING to Amazing Shipping (as bareboat charterer) to begin her performance under the Amazing Charter Party.

11. Both ICON and the Vessel have been continually performing all obligations required of them since the Vessel's delivery under the Amazing Charter Party, and Amazing Shipping has been profiting from its use of the vessel.

12. Pursuant to the parties' further agreement under the MOA and Amazing Charter Party, Amazing Shipping's performance of all terms and conditions of both agreements is in all respects fully guaranteed and secured by its corporate parent, Geden Holdings. This guarantee by Geden Holdings is memorialized in a fully executed Guarantee and Indemnity Agreement signed by Geden Holdings on October 1, 2010 (the "Guarantee and Indemnity Agreement"), which specifically references the Amazing Charter Party and which provides in relevant part that Geden Holdings "irrevocably and unconditionally guarantees the due and punctual observance and performance by the Bareboat Charterer [Amazing Shipping] of all its obligations under the Bareboat Charter." *See* Guarantee and Indemnity Agreement, attached as Exhibit C. Geden Holdings further agreed that "if any of the Bareboat Charterer's Liabilities is not paid when it is due and payable, whether on maturity or otherwise, the Guarantor [Geden Holdings] will, immediately upon demand, make such payment to the Owner in the manner specified by the Owner, together with interest...."

### Defendants' Breach of the Amazing Charter Party

13. Beginning on or about November 1, 2012, and continuing through the present, Amazing Shipping has breached its obligations under the Amazing Charter Party in the following nonexclusive ways: by failing to make charter hire payments; by making reduced and/or incomplete charter hire payments and refusing demands for full payment; by failing to pay sundries and other amounts due under the charter party; and in other respects to be proven at trial of this matter. As a result of result of these breaches, Amazing Shipping is indebted to

ICON in the principal amount of $1,378,764.43, which amount represents past due charter hire owed to ICON by Amazing Shipping.

14. In addition to the breaches described in Paragraph 13, Amazing Shipping has further breached Clause 40(c) of the Amazing Charter Party by failing to provide ICON with additional security and/or charter hire payments despite the value of the Vessel falling below 125% of the aggregate amount advanced to ICON. As of May 1, 2013, Amazing Shipping is indebted to ICON in the amount of $2,910,109.00 to remedy this breach, which amount represents additional security and/or charter hire that Amazing Shipping is obligated to pay ICON to bring itself into compliance with Clause 40(c) of the Amazing Charter Party.

15. As a result of the aforementioned breaches of the Amazing Charter Party, Amazing Shipping is indebted to ICON in the present amount of $4,288,873.43, exclusive of interest, costs, and attorney fees.

16. Pursuant to Clause 35 of the Amazing Charter Party, Amazing Shipping is obligated to pay ICON interest at the rate of 2%, calculated from the relevant due date. As of the date of this Verified Complaint, Amazing Shipping is therefore further indebted to ICON in the amount of $64,744.01 for interest due on the unpaid charter hire payments set forth above.

17. As the guarantor of Amazing Shipping under the Guarantee and Indemnity Agreement and Clause 39 of the Amazing Charter Party and other relevant agreements, Geden Holdings is equally liable to ICON for the debt owed by Amazing Shipping. Despite due demand, Geden Holdings has refused to pay the outstanding charter hire, additional security; and otherwise ensure Amazing Shipping's compliance with the Amazing Charter Party. Geden Holdings refusal to pay the outstanding debt despite due demand constitutes a breach of the guaranty and security agreement between Geden Holdings and ICON.

### Fraud & Alter Ego Allegations

18. Although Geden Holdings reports to stakeholders and others that it owns and/or operates an extensive fleet of more than fifty (50) vessels, each vessel is in fact owned and/or operated by what Geden Holdings refers to as a "Single Vessel Entity" or "SVE". On information and belief, Geden Holdings maintains 100% ownership of each SVE and so dominates and controls each SVE as to render them mere alter egos of Geden Holdings.

19. Hero Shipping, Ltd. ("Hero Shipping") is an SVE that exists as a mere alter ego of Geden Holdings for the shielding of Geden Holdings' assets from creditors such as ICON. Further, as set forth below, Geden Holdings is in the process of using Hero Shipping to perpetrate a fraud against ICON.

20. Geden Holdings is the 100% owner and corporate parent of Hero Shipping.

21. There is 100% commonality between the directors of Hero Shipping and the directors of Geden Holdings. The directors of both entities are: Ali Tugrul Tokgoz, Mehmet Bulent Ergin, and Bekir Irdem.

22. Mr. Tokgoz, who serves as a director of both Hero Shipping and Geden Holdings, is also the only individual shareholder of Geden Holdings.

23. Hero Shipping is grossly undercapitalized. According to Hero Shipping's most recent annual report, Hero Shipping maintains capital of only €1200. Despite this minimal amount of capital, Hero Shipping is the registered owner of a crude oil tanker of 83,580 gross tons named M/V HERO. Hero Shipping maintains inadequate capital to operate a vessel such as the HERO and, on information and belief, receives regular infusions of cash from Geden Holdings as necessary to sustain its operations.

24. Hero Shipping was incorporated on or about August 8, 2007, by Geden Holdings to serve as a shell company through which Geden Holdings intended to own the HERO. Hero Shipping exists solely for the purpose of acting as the paper "owner" of the HERO and does not conduct any form of business or operation other than that directed by Geden Holdings.

25. Geden Holdings fails to operate Hero Shipping as an independent profit center, instead maintaining it as a pass-through entity whose profits go directly to Geden Holdings and whose losses are borne directly by Geden Holdings. Geden Holdings' use of Hero Shipping as a pass-through entity along with its practice of financing Hero Shipping's operation essentially deprives Hero Shipping of any independent financial existence and renders it a mere alter ego of Geden Holdings.

26. Despite the purportedly separate incorporation of Geden Holdings and Hero Shipping, Geden Holdings consistently represents to investors and stakeholders that the property of Hero Shipping is in fact the property of Geden Holdings. Toward that end, in a recent corporate overview prepared by Geden Holdings in anticipation of its corporate restructuring, Geden Holdings represented itself to investors and stakeholders as the owner of the M/V HERO. *See* Company and Fleet Overview, p. 6 of Geden Holdings Process Update #9, attached as Exhibit D. Geden Holdings' practice of commingling property with Hero Shipping is an abuse of the corporate form.

27. Geden Holdings practice of commingling its property and assets with that of subsidiaries such as Hero Shipping is further evidenced by Cash Flow reports distributed by Geden Holdings to its investors and stakeholders, which show monthly bareboat charter payments due from Geden Holdings in the amount of $6,400,000 - $6,700,000. *See* Cash Flow #9, p. 11 of Geden Holdings Process Update #9, attached as Exhibit D. On information and

belief, these entries on Geden Holdings' cash flow report reflect payments due from subsidiaries for vessels chartered by those respective subsidiaries, not vessels chartered by Geden Holdings. This is confirmed by searches of the Equasis directory of vessels and vessel operators, which fail to identify any vessels that are bareboat chartered by Geden Holdings.

28. Geden Holdings has used and continues to misuse the corporate form for the purpose of committing a fraud against ICON.

29. On information and belief, Amazing Shipping's failure to pay charter hire during the first quarter of 2013 was the direct result of a policy implemented by Geden Holdings of "deferring" bareboat hire payments. *See* Project Hermitage Restructuring Report, attached as Exhibit E.

30. Geden Holdings' fraud and abuse of the corporate form is further evidenced by its plan to divide its assets and chartering commitments between four corporate entities for the purpose of protecting its profitable assets from creditors and placing its non-profitable assets in shell corporations who are intended to be insolvent from the moment of their creation. This plan is set forth at length in a report prepared on Geden Holdings' behalf by Alix Partners, attached as Exhibit E. Pursuant to this plan, Geden Holdings intends to create new subsidiaries (referred to in Geden Holdings' plan as "Newco Alpha" and "Newco Bravo") and to transfer its profitable and favored assets to those companies, while placing its unwanted commitments in separate corporate entities that are intended to fail. As set forth at length in the Project Hermitage Restructuring Report attached as Exhibit E, Geden Holding's intention is to divide its fleet and position these entities as follows:

- Newco Alpha is "intended to form a viable standalone entity of up to 29 vessels (21 Tanker and 8 Bulker)...." *See* Project Hermitage Restructuring Report, p. 16. Geden

8

Holdings intends to capitalize Newco Alpha such as to establish a favorable 95% Loan To Value (LTV) ratio for Newco Alpha's assets. *Id.*

- Newco Bravo will be created to own four (4) vessels presently owned by other subsidiaries of Geden Holdings that are "financed by Chinese banks" and "are considerably under water yet they must be offered attractive terms given that the Chinese banks benefit from a Corporate Guarantee." *See* Project Hermitage Restructuring Report, p. 24.

- Newco Group C will include "11 Bulker [bulk cargo carriers]" and "would require revision of current contractual debt service in order to maintain liquidity."

- Finally, Oldco Group D (also referred to as "Geden Oldco") would maintain as assets "11 Group vessels [that] make up the residual fleet **and are not part of the Company's future**. These include the vessels funded by FSL, **ICON**, Octavian and Stealth when traditional financing was unavailable." Geden Holdings intends that this "[e]ntity would require revision of current contractual debt service in order to maintain liquidity," and would include ICON's vessel, the M/V AMAZING. By design, Oldco Group D will have negative cash flow from the date of its inception, and will exist only for the purpose of providing an insolvent target for those current creditors of Geden Holdings who Geden Holdings has decided to defraud.

31. As Geden Holdings' written plan confirms, Geden Holdings is preparing to abuse the corporate structure by causing the incorporation of successor entities to shield its favored assets from creditors such as ICON, while placing its "under water" assets in corporate entities that are intended from the outset to be illiquid and to eventually fail.

32. Despite Geden Holding's decision to "defer" payment to creditors such as ICON, Geden Holdings continues to make timely and full payment of all debts due to the aforementioned Chinese Banks, to whom Geden Holdings' parent company has provided a guarantee, in order to prevent creditors from asserting claims directly against Geden Holdgins' parent. This deliberate practice was instituted in order to protect the credit of Geden Holdings' parent entity in anticipation of the upcoming corporate reorganization, while allowing Geden Holdings' own financial solvency to collapse to the prejudice of its creditors. This intentionally preferential treatment of certain creditors constitutes a fraud against disfavored creditors such as ICON.

33. Geden Holdings' intent to perpetrate a fraud through its abuse of the corporate form is further evidence by its intention to transfer ownership of its vessels to its soon-to-be-formed successor entities "in order to protect relevant lenders from sister ship arrest in South Africa-type jurisdiction." Because the United States is a "South Africa-type jurisdiction" that allows seizure of sister ships, Geden Holdings' plan is intended to defraud creditors such as ICON by placing Geden Holdings' valuable assets beyond ICON's reach.

34. Finally, in addition to its fraudulent treatment of ICON through its use and abuse of Hero Shipping, Geden Holdings has further defrauded ICON by inducing it to enter into a vessel purchase agreement on the basis of a corresponding bareboat charter party and guarantee agreement which Geden Holdings had no intention of honoring. Through this fraud, Geden Holdings induced ICON to contribute $33,500,000.00 in capital to Geden Holding's accounts. As evidence by its restructuring plan, Geden Holdings now intends to utilize that capital to establish more profitable holding companies while Geden Holdings and Amazing Shipping are rendered insolvent.

35. On the basis of the foregoing Fraud & Alter Ego Allegations, good cause exists for disregarding the alleged independent corporate identities of Geden Holdings and Hero Shipping and treating the two entities as alter egos of one another. As Geden Holdings' alter ego, any and all property of Hero Shipping, such as the M/V HERO, a vessel presently in this district and subject to the jurisdiction of the Court, is subject to attachment and seizure under Admiralty Rule B to secure claims against Geden Holdings, which in the instant lawsuit are made against Geden Holding in its capacity as guarantor of Amazing Shipping.

### Rule B Allegations

36. Upon information and belief, neither Amazing Shipping nor Geden Holding can be found within the territorial jurisdiction of this Court within the meaning of Admiralty Rule B. However, Defendants have goods and chattels within this District subject to seizure, arrest, and attachment, namely the M/V HERO, an asset owned by Geden Holdings' corporate alter ego, Hero Shipping. Further, Amazing Shipping and Geden Holdings are non-residents with no duly appointed agent for service of process within the State of Texas, entitling ICON to a Writ of Attachment, pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims and applicable state laws, executable against Defendant and all of its and its alter ego's property within the state, including the M/V HERO.

37. ICON seeks an order from this court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims attaching, *inter alia*, any property of the Defendant within the District for the purpose of obtaining personal jurisdiction over the Defendant, to compel arbitration and to secure the Plaintiff's claim as described above.

**WHEREFORE**, ICON Amazing LLC prays:

A.  That process in due form of law issue against the Defendants, citing them to appear and answer under oath all and singular the matters alleged in the Complaint, failing which default judgment be entered against it in the sum of $4,353,617.44.

B.  That since the Defendants cannot be found within this District and have no agent for service of process in this District, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims attaching the M/V HERO and any other property of the Defendants up to the amount of $4,353,617.44, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Complaint;

D.  That this Court award Plaintiff the attorneys' fees and costs incurred in this action; and

E.  That the Plaintiff have such other, further relief as the Court deems just, proper and equitable.

Respectfully submitted,

_/s/_____

Derek A. Walker
Texas State Bar No. 00786376
Attorney-in-Charge
Dimitri P. Georgantas
Texas State Bar No. 07805100
Kevin P. Walters
Texas State Bar No. 20818000
Federal I.D. No. 5649
815 Walker Street, Suite 953
Houston, Texas 77002
Telephone: 713-546-9800
Facsimile: 713-546-9806

and

Alan R. Davis, LA Bar #31694
2300 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-2300
Telephone: (504) 585-7000
**Attorneys for ICON Amazing LLC**

OF COUNSEL:
CHAFFE McCALL, L.L.P.