# MEMORANDUM OF AGREEMENT

Dated:

> Norwegian Shipbrokers' Association's Memorandum of Agreement for sale and purchase of ships. Adopted by The Baltic and International Maritime Council (BIMCO) in 1956.
> Code-name
> **SALEFORM 1993**
> Revised 1966, 1983 and 1986/87.

Amazing Shipping Ltd., hereinafter called the Sellers, have agreed to sell, and ICON Amazing, LLC   1
hereinafter called the Buyers, have agreed to buy   2

Name: m.v. "AMAZING"   3
Classification Society/Class: Bureau Veritas   4
Built: 2010                                            By: Cosco Shipyard Group Co., Ltd (Yard)   5
Flag: Malta                                            Place of Registration: Valleta   6
Call Sign: 9HA2330                                     Grt/Nrt: GRT: 33,044 / NRT: 19,231   7
Register Number: 9456331   8

hereinafter called the Vessel, on the following terms and conditions:   9

Definitions   10

"Banking days" are days on which banks are open both in the country of the currency   11
stipulated for the Purchase Price in Clause 1 and in the place of closing stipulated in Clause 8.   12

"In writing" or "written" means a letter handed over from the Sellers to the Buyers or vice versa,   13
a registered letter, telex, telefax or other modern form of written communication.   14

"Classification Society" or "Class" means the Society referred to in line 4.   15

1.     Purchase Price USD33,500,000 (United States Dollars thirty three million five hundred   16
thousand)

2.     Deposit   17
~~N/AAs security for the correct fulfilment of this Agreement the Buyers shall pay a deposit of 10~~   18
~~%~~
~~(ten per cent) of the Purchase Price within ———— banking days from the date of this~~   19
~~Agreement. This deposit shall be placed with~~   20
~~and held by them in a joint account for the Sellers and the Buyers, to be released in accordance~~   21
~~with joint written instructions of the Sellers and the Buyers. Interest, if any, to be credited to the~~   22
~~Buyers. Any fee charged for holding the said deposit shall be borne equally by the Sellers and the~~   23
~~Buyers.~~   24

3.     Payment   25
The said Purchase Price shall be paid in full free of bank charges to   26
Beneficiary Name: DVB Bank NV Rotterdam
Beneficiary Bank:   HSBC Bank USA
Swift Code: MRMDUS33
Beneficiary Bank Account Number: 00302139
CHIPS ABA: 0108
Fedwire Routing Code: 021001088
Reference: AMAZING HN ZS07031
on delivery of the Vessel.   27
~~, but not later than 3 banking days after the Vessel is in every respect~~   28
~~physically ready for delivery in accordance with the terms and conditions of this Agreement and~~

This document is a computer generated SALEFORM 1993 form printed by authority of the Norwegian Shipbrokers' Association. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original approved document shall apply. BIMCO and the Norwegian Shipbrokers' Association assume no responsibility for any loss, damage or expense as a result of discrepancies between the original approved document and this computer generated document.

Copyright, Norwegian Shipbrokers' Association, Oslo, Norway.
Printed by BIMCO's idea

EXHIBIT
1
tabbies

~~Notice of Readiness has been given in accordance with Clause 5.~~                              29

                                                                                                30

4.   Inspections

a)*   ~~The Buyers have inspected and accepted the Vessel's classification records. The Buyers~~   31
      ~~have also inspected the Vessel at/in ——— on ———~~                                          32
      ~~and have accepted the Vessel following this inspection and the sale is outright and definite,~~  33
      ~~subject only to the terms and conditions of this Agreement.~~                               34

b)*   ~~The Buyers shall have the right to inspect the Vessel's classification records and declare~~  35
      ~~whether same are accepted or not within ———~~                                               36

      ~~The Sellers shall provide for inspection of the Vessel at/in~~                              37
      ~~The Buyers shall undertake the inspection without undue delay to the Vessel. Should the~~   38
      ~~Buyers cause undue delay they shall compensate the Sellers for the losses thereby incurred.~~  39
      ~~The Buyers shall inspect the Vessel without opening up and without cost to the Sellers.~~   40
      ~~During the inspection, the Vessel's deck and engine log books shall be made available for~~  41
      ~~examination by the Buyers. If the Vessel is accepted after such inspection, the sale shall~~  42
      ~~become outright and definite, subject only to the terms and conditions of this Agreement,~~  43
      ~~provided the Sellers receive written notice of acceptance from the Buyers within 72 hours~~  44
      ~~after completion of such inspection.~~                                                      45
      ~~Should notice of acceptance of the Vessel's classification records and of the Vessel not be~~  46
      ~~received by the Sellers as aforesaid, the deposit together with interest earned shall be~~   47
      ~~released immediately to the Buyers, whereafter this Agreement shall be null and void.~~      48

*     ~~4 a) and 4b) are alternatives; delete whichever is not applicable. In the absence of deletions,~~  49
      ~~alternative 4a) to apply.~~                                                                 50

5.   Notices, time and place of delivery                                                           51

a)    The Sellers shall keep the Buyers well informed of the Vessel's itinerary and shall           52
      provide the Buyers with 15, 10, and 5 days notice of the estimated time of arrival at the     53
      intended place of drydocking/underwater inspection/delivery. When the Vessel is at the place  54
      of delivery and in every respect physically ready for delivery in accordance with this        55
      Agreement, the Sellers shall give the Buyers a written Notice of Readiness for delivery.       56

b)    The Vessel shall be delivered and taken over in international waters in the same               57
      condition as she was delivered by the Yard to Sellers in August 2010, fair wear and tear
      excepted safely afloat at a safe and accessible berth or
      ~~anchorage at/in~~                                                                           58
      ~~in the Sellers' option.~~                                                                   59

      Expected time of delivery: 4 October 2010 at the latest                                       60

      Date of cancelling (see Clauses 5 c), [6 b] (iii)] and 14): 15 October 2010                   61

c)    If the Sellers anticipate that, notwithstanding the exercise of due diligence by them, the    62
      Vessel will not be ready for delivery by the cancelling date they may notify the Buyers in     63
      writing stating the date when they anticipate that the Vessel will be ready for delivery and   64
      propose a new cancelling date. Upon receipt of such notification the Buyers shall have the     65
      option of either cancelling this Agreement in accordance with Clause 14 within 7 running       66
      days of receipt of the notice or of accepting the new date as the new cancelling date. If the  67
      Buyers have not declared their option within 7 running days of receipt of the Sellers'         68
      notification or if the Buyers accept the new date, the date proposed in the Sellers' notification  69
      shall be deemed to be the new cancelling date and shall be substituted for the cancelling      70
      date stipulated in line 61.                                                                   71

      If this Agreement is maintained with the new cancelling date all other terms and conditions    72
      hereof including those contained in Clauses 5 a) and 5 c) shall remain unaltered and in full   73
      force and effect. Cancellation or failure to cancel shall be entirely without prejudice to any  74
      claim for damages the Buyers may have under Clause 14 for the Vessel not being ready           75
      by
      the original cancelling date.                                                                 76

d)    Should the Vessel become an actual, constructive or compromised total loss before delivery    77
      ~~the deposit together with interest earned shall be released immediately to the Buyers~~      78

This document is a computer generated SALEFORM 1993 form printed by authority of the Norwegian Shipbrokers' Association. Any insertion or deletion to the form must be clearly visible. In the event of any modifications made to the pre-printed text of this document which is not clearly visible, the text of the original approved document shall apply. BIMCO and the Norwegian Shipbrokers' Association assume no responsibility for any loss, damage or expense as a result of discrepancies between the original approved document and this computer generated document.

Whereafter this Agreement shall be null and void.                                                      79

8.          Drydocking/Divers Inspection                                                               80

a)**      The Sellers shall place the Vessel in drydock at the port of delivery for inspection by the    81
          Classification Society of the Vessel's underwater parts below the deepest load line, the      82
          extent of the inspection being in accordance with the Classification Society's rules. If the   83
          rudder, propeller, bottom or other underwater parts below the deepest load line are found      84
          broken, damaged or defective so as to affect the Vessel's class, such defects shall be made    85
          good at the Sellers' expense to the satisfaction of the Classification Society without         86
          condition/recommendation*.                                                                    87

b)**      (i)    The Vessel is to be delivered without drydocking. However, the Buyers shall           88
          have the right at their expense to arrange for an underwater inspection by a diver approved    89
          by the Classification Society prior to the delivery of the Vessel. The Sellers shall at their  90
          cost make the Vessel available for such inspection. The extent of the inspection and the       91
          conditions under which it is performed shall be to the satisfaction of the Classification      92
          Society. If the conditions at the port of delivery are unsuitable for such inspection, the     93
          Sellers shall make the Vessel available at a suitable alternative place near to the delivery   94
          port.                                                                                          95

          (ii)   If the rudder, propeller, bottom or other underwater parts below the deepest load line  96
          are found broken, damaged or defective so as to affect the Vessel's class, then unless         97
          repairs can be carried out afloat to the satisfaction of the Classification Society, the Sellers 98
          shall arrange for the Vessel to be drydocked at their expense for inspection by the            99
          Classification Society of the Vessel's underwater parts below the deepest load line, the       100
          extent of the inspection being in accordance with the Classification Society's rules. If the   101
          rudder, propeller, bottom or other underwater parts below the deepest load line are found      102
          broken, damaged or defective so as to affect the Vessel's class, such defects shall be made    103
          good by the Sellers at their expense to the satisfaction of the Classification Society          104
          without condition/recommendation*. In such event the Sellers are to pay also for the cost of   105
          the underwater inspection and the Classification Society's attendance.                         106

          (iii)  If the Vessel is to be drydocked pursuant to Clause 6 b) and no suitable dry-           107
          docking facilities are available at the port of delivery, the Sellers shall take the Vessel    108
          to a port where suitable drydocking facilities are available, whether within or outside the    109
          delivery range as per Clause 5 b). Once drydocking has taken place the Sellers shall deliver    110
          the Vessel at a port within the delivery range as per Clause 5 b) which shall, for the         111
          purpose of this Clause, become the new port of delivery. In such event the cancelling date     112
          provided for in Clause 5 b)) shall be extended by the additional time required for the         113
          drydocking and extra steaming, but limited to a maximum of 14 running days.                    114

c)        If the Vessel is drydocked pursuant to Clause 6 a) or 6 b) above                              115

          (i)    the Classification Society may require survey of the tailshaft system, the extent of    116
          the survey being to the satisfaction of the Classification surveyor. If such survey is not     117
          required by the Classification Society, the Buyers shall have the right to require the tailshaft 118
          to be drawn and surveyed by the Classification Society, the extent of the survey being in      119
          accordance with the Classification Society's rules for tailshaft survey and consistent with    120
          the current stage of the Vessel's survey cycle. The Buyers shall declare whether they          121
          require the tailshaft to be drawn and surveyed not later than by the completion of the         122
          inspection by the Classification Society. The drawing and refitting of the tailshaft shall be   123
          arranged by the Sellers. Should any parts of the tailshaft system be condemned or found        124
          defective so as to affect the Vessel's class, those parts shall be renewed or made good at     125
          the Sellers' expense to the satisfaction of the Classification Society without               126
          condition/recommendation*.                                                                    127

          (ii)   the expenses relating to the survey of the tailshaft system shall be borne            128
          by the Buyers unless the Classification Society requires such survey to be carried out, in     129
          which case the Sellers shall pay these expenses. The Sellers shall also pay the expenses       130
          if the Buyers require the survey and parts of the system are condemned or found defective      131
          or broken so as to affect the Vessel's class*.                                                132

          (iii)  the expenses in connection with putting the Vessel in and taking her out of           133
          drydock, including the drydock dues and the Classification Society's fees shall be paid by      134
          the Sellers if the Classification Society issues any condition/recommendation* as a result     135
          of the survey or if it requires survey of the tailshaft system. In all other cases the Buyers  136
          shall pay the aforesaid expenses, dues and fees.                                              137

          (iv)   the Buyers' representative shall have the right to be present in the drydock, but       138

This document is a computer generated SALEFORM 1993 form printed by authority of the Norwegian Shipbrokers' Association. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original approved document shall apply. BIMCO and the Norwegian Shipbrokers' Association assume no responsibility for any loss, damage or expense as a result of discrepancies between the original approved document and this computer generated document.

~~without interfering with the work or decisions of the Classification surveyor.~~ 139

~~(v)   the   Buyers   shall   have   the   right   to   have   the   underwater   parts   of   the   Vessel~~ 140
~~cleaned   and   painted   at   their   risk   and   expense   without   interfering   with   the   Sellers'   or   the~~ 141
~~Classification   surveyor's   work,   if   any,   and   without   affecting   the   Vessel's   timely   delivery.   If,~~ 142
~~however,   the   Buyers'   work   in   drydock   is   still   in   progress   when   the   Sellers   have~~ 143
~~completed   the   work   which   the   Sellers   are   required   to   do,   the   additional   docking   time~~ 144
~~needed   to   complete   the   Buyers'   work   shall   be   for   the   Buyers'   risk   and   expense.   In   the   event~~ 145
~~that   the   Buyers'   work   requires   such   additional   time,   the   Sellers   may   upon   completion   of   the~~ 146
~~Sellers'   work   tender   Notice   of   Readiness   for   delivery   whilst   the   Vessel   is   still   in   drydock~~ 147
~~and   the   Buyers   shall   be   obliged   to   take   delivery   in   accordance   with   Clause 3, whether~~ 148
~~the Vessel is in drydock or not and irrespective of Clause 5 a).~~ 149

~~* Notes, if any, in the surveyors report which are accepted by the Classification Society~~ 150
~~without condition/recommendation are not to be taken into account.~~ 151

~~** 6 a) and 6 b) are alternatives; delete whichever is not applicable. In the absence of deletions,~~ 152
~~alternative 6 a) to apply.~~ 153

7.   Spares/bunkers, etc. 154

The Sellers shall deliver the Vessel to the Buyers with everything belonging to her on board and on 155
Shore as listed in Schedule 1 to the Charter. ~~All   spare   parts   and   spare   equipment   including~~ 156
~~spare   tail   end   shaft(s)   and/or   spare~~
~~propeller(s)/propeller   blade(s),   if   any,   belonging   to   the   Vessel   at   the   time   of   inspection   used   or~~ 157
~~unused,   whether   on   board   or   not   shall   become   the   Buyers'   property,   but   spares   on   order   are   to~~ 158
~~be~~
~~excluded.   Forwarding   charges,   if   any,   shall   be   for   the   Buyers'   account.   The   Sellers   are   not   required   to~~ 159
~~replace   spare   parts   including   spare   tail   and   shaft(s)   and   spare   propeller(s)/propeller   blade(s)   which~~ 160
~~are   taken   out   of   spare   and   used   as   replacement   prior   to   delivery,   but   the   replaced   items   shall   be   the~~ 161
~~property   of   the   Buyers.~~ The radio installation and navigational equipment shall be included in the sale 162
without extra payment if they are the property of the Sellers. Unused stores and provisions shall be 163
included in the sale and be taken over by the Buyers without extra payment. 164

~~The   Sellers   have   the   right   to   take   ashore   crockery,   plates,   cutlery,   linen   and   other   articles   bearing   the~~ 165
~~Sellers'   flag   or   name,   provided   they   replace   same   with   similar   unmarked   items.   Library,   forms,   etc.,~~ 166
~~exclusively   for   use   in   the   Sellers'   vessel(s),   shall   be   excluded   without   compensation.   Captain's,~~ 167
~~Officers'   and   Crew's   personal   belongings   including   the   slop   chest   are   to   be   excluded   from   the   sale,~~ 168
~~as well as the following additional items (including items on hire):~~ 169

~~The   Buyers   shall   take   over   the   remaining   bunkers   and   unused   lubricating   oils   in   storage   tanks   and~~ 170
~~sealed   drums   and   pay   the   current   net   market   price   (excluding   barging   expenses)   at   the   port   and   date~~ 171
~~of delivery of the Vessel.~~ 172
~~Payment   under   this   Clause   shall   be   made   at   the   same   time   and   place   and   in   the   same   currency   as~~ 173
~~the Purchase Price.~~ 174

Regarding bunkers and lubes: see clause 18

8.   Documentation 175

The place of closing: 176

In exchange for payment of the Purchase Price the Sellers shall furnish the Buyers with delivery 177
documents, as per Clause 17 and the following documents namely: 178
a)   Two of the originals of the Legal Bill of Sale in a form recordable in Malta- (the country in 179
which the Buyers are
to register the Vessel), warranting that the Vessel is free from all encumbrances, mortgages 180
and maritime liens or any other debts or claims whatsoever, ~~duly   notarially   attested   and~~ 181
~~legalized by the consul of such country or other competent authority.~~ 182
b)   Current Certificate of Ownership issued by the competent authorities of the flag state of 183
the Vessel. 184
c)   Confirmation of Class issued within 72 hours prior to delivery. 185
~~d)   Current   Certificate   issued   by   the   competent   authorities   stating   that   the   Vessel   is   free   from~~ 186
~~registered encumbrances.~~ 187
~~e)   Certificate   of   Deletion   of   the   Vessel   from   the   Vessel's   registry   or   other   official   evidence   of~~ 188
~~deletion   appropriate   to   the   Vessel's   registry   at   the   time   of   delivery,   or,   in   the   event   that   the~~ 189
~~registry   does   not   as   a   matter   of   practice   issue   such   documentation   immediately,   a   written~~ 190
~~undertaking by the Sellers to effect deletion from the Vessel's registry forthwith and furnish a~~ 191

This document is a computer generated SALEFORM 1993 form printed by authority of the Norwegian Shipbrokers' Association. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original approved document shall apply. BIMCO and the Norwegian Shipbrokers' Association assume no responsibility for any loss, damage or expense as a result of discrepancies between the original approved document and this computer generated document.

~~Certificate or other official evidence of deletion to the Buyers promptly and latest within 4~~   192
~~(four) weeks after the Purchase Price has been paid and the Vessel has been delivered.~~   193

f)   Any such additional documents as may reasonably be required by the competent authorities   194
for the purpose of registering the Vessel, provided the Buyers notify the Sellers of any such   195
documents as soon as possible after the date of this Agreement.   196

At the time of delivery at the documentary closing the Buyers and Sellers shall sign and   197
deliver to each other a Protocol of
Delivery and Acceptance confirming the date and time of delivery of the Vessel from the Sellers to the   198
Buyers.   199

~~At the time of delivery the Sellers shall hand to the Buyers the classification certificate(s) as well as all~~   200
~~plans etc., which are on board the Vessel. Other certificates which are on board the Vessel shall also~~   201
~~be handed over to the Buyers unless the Sellers are required to retain same, in which case the~~   202
~~Buyers to have the right to take copies. Other technical documentation which may~~   203
~~be in the Sellers' possession shall be promptly forwarded to the Buyers at their expense, if they so~~   204
~~request. The Sellers may keep the Vessel's log books but the Buyers to have the right to take~~   205
~~copies of same.~~   206

9.   Encumbrances   207

The Sellers warrant that the Vessel, at the time of delivery, is free from all charters other than the   208
Charter and the Existing Time Charter (defined at Clause 17) , encumbrances,
mortgages and maritime liens or any other debts whatsoever. The Sellers hereby undertake   209
to indemnify the Buyers against all consequences of claims made against the Vessel which have   210
been incurred prior to the time of delivery.   211

10.   Taxes, etc.   212

Any taxes, fees and expenses in connection with the purchase and registration under the Buyers' flag   213
shall be for the Buyers' Sellers' account, whereas similar charges in connection with the closing of the   214
Sellers'
register shall be for the Sellers' account.   215

11.   Condition on delivery   216

The Vessel with everything belonging to her shall be at the Sellers' risk and expense until she is   217
delivered to the Buyers, but subject to the terms and conditions of this Agreement she shall be   218
delivered and taken over in the same condition as she was delivered by the Yard to Sellers in   219
August 2010, fair wear and tear excepted as she was at the time of inspection, fair wear and tear
excepted.
However, tThe Vessel shall be delivered with her class maintained without   220
condition/recommendation",
free of average damage affecting the Vessel's class, and with her classification certificates and   221
national certificates, as well as all other certificates the Vessel had at the time of inspection, valid and   222
unextended without condition/recommendation" by Class or the relevant authorities at the time of   223
delivery.   224
"Inspection" in this Clause 11, shall mean the Buyers' inspection according to Clause 4 a) or 4 b), if   225
applicable, or the Buyers' inspection prior to the signing of this Agreement. If the Vessel is taken over   226
without inspection, the date of this Agreement shall be the relevant date.   227

Notes, if any, in the surveyor's report which are accepted by the Classification Society   228
without condition/recommendation are not to be taken into account.   229

N/A12.  Name/markings   230

Upon delivery the Buyers undertake to change the name of the Vessel and alter funnel markings.   231

13.   Buyers' default   232

Should the deposit not be paid in accordance with Clause 2, the Sellers have the right to cancel this   233
Agreement, and they shall be entitled to claim compensation for their losses and for all expenses   234
incurred together with interest.   235
Should the Purchase Price not be paid in accordance with Clause 3, the Sellers have the right to   236
cancel the Agreement, in which case, subject always to Clauses 17 to 19, the deposit together with   237
interest earned shall be released to the
Sellers. If the deposit does not cover their loss, the Sellers shall be entitled to claim further   238

This document is a computer generated SALEFORM 1993 form printed by authority of the Norwegian Shipbrokers' Association. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original agreed document shall apply. BIMCO and the Norwegian Shipbrokers' Association assume no responsibility for any loss, damage or expense as a result of discrepancies between the original approved document and this computer generated document.

compensation for their losses and for all reasonable documented expenses properly incurred together with interest at the rate of LIBOR +2%. 239

**14.   Sellers' default** 240

Should the Sellers fail to give Notice of Readiness in accordance with Clause 5 a) or fail to be ready 241
to validly complete a legal transfer or comply with the provisions of Clause 8 by the date 242
stipulated in line 61 the Buyers shall have
the option of cancelling this Agreement provided always that the Sellers shall be granted a 243
maximum of 3 banking days after Notice of Readiness has been given to make arrangements 244
for the documentation set out in Clause 8. If after Notice of Readiness has been given but before 245
the Buyers have taken delivery, the Vessel ceases to be physically ready for delivery and is not 246
made physically ready again in every respect by the date stipulated in line 61 and new Notice of 247
Readiness given, the Buyers shall retain their option to cancel. In the event that the Buyers elect 248
to cancel this Agreement the deposit together with interest earned shall be released to them 249
immediately. 250
Should the Sellers fail to give Notice of Readiness by the date stipulated in line 61 or fail to be ready 251
to validly complete a legal transfer or comply with the provisions of Clause 8 as aforesaid they 252
shall make due compensation to the Buyers for
their loss and for all expenses together at the rate of LIBOR +2% with interest if their 253
failure is due to proven
negligence and whether or not the Buyers cancel this Agreement. 254

**15.   Buyers' representatives** 255

After this Agreement has been signed by both parties and the deposit has been lodged, the Buyers 256
have the right to place two representatives on board the Vessel at their sole risk and expense upon 257
arrival at ———— on or about 258
These representatives are on board for the purpose of familiarisation and in the capacity of 259
observers only, and they shall not interfere in any respect with the operation of the Vessel. The 260
Buyers' representatives shall sign the Sellers' letter of indemnity prior to their embarkation. 261

**16.   Arbitration** 282

See Clause 19a) This Agreement shall be governed by and construed in accordance with 283
English law and
any dispute arising out of this Agreement shall be referred to arbitration in London in 264
accordance with the Arbitration Acts 1950 and 1979 or any statutory modification or 265
re-enactment thereof for the time being in force, one arbitrator being appointed by each 266
party. On the receipt by one party of the nomination in writing of the other party's arbitrator, 267
that party shall appoint their arbitrator within fourteen days, failing which the decision of the 268
single arbitrator appointed shall apply. If two arbitrators properly appointed shall not agree 269
they shall appoint an umpire whose decision shall be final. 270
b)*   This Agreement shall be governed by and construed in accordance with Title 9 of the 271
United States Code and the Law of the State of New York and should any dispute arise out of 272
this Agreement, the matter in dispute shall be referred to three persons at New York, one to 273
be appointed by each of the parties hereto, and the third by the two so chosen; their 274
Decision or that of any two of them shall be final, and for purpose of enforcing any award, this 275
Agreement may be made a rule of the Court. 276
The proceedings shall be conducted in accordance with the rules of the Society of Maritime 277
Arbitrators, Inc., New York. 278

c)*   Any dispute arising out of this Agreement shall be referred to arbitration at 279
————, subject to the procedures applicable there. 280
The laws of ———— shall govern this Agreement. 281

*   16-a), 16-b) and 16-c) are alternatives; delete whichever is not applicable. In the absence of 282
deletions, alternative 16-a) to apply. 283

See also attached Clauses 17- 19

For and on behalf of
(Sellers)

Name:

For and on behalf of
(Buyers)

Name:

This document is a computer generated SALEFORM 1993 form printed by authority of the Norwegian Shipbrokers' Association. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original approved document shall apply. BIMCO and the Norwegian Shipbrokers' Association assume no responsibility for any loss, damage or expense as a result of discrepancies between the original approved document and this computer generated document.

compensation for their losses and for all reasonable documented expenses properly incurred    239
together with interest at the rate of LIBOR +2%.

14.    Sellers' default    240

Should the Sellers fail to give Notice of Readiness in accordance with Clause 5 a) or fail to be ready    241
to validly complete a legal transfer or comply with the provisions of Clause 8 by the date    242
stipulated in line 81 the Buyers shall have
the option of cancelling this Agreement provided always that the Sellers shall be granted a    243
maximum of 3 banking days after Notice of Readiness has been given to make arrangements    244
for the documentation set out in Clause 8. If after Notice of Readiness has been given but before    245
the Buyers have taken delivery, the Vessel ceases to be physically ready for delivery and is not    246
made physically ready again in every respect by the date stipulated in line 81 and new Notice of    247
Readiness given, the Buyers shall retain their option to cancel. In the event that the Buyers elect    248
to cancel this Agreement the deposit together with interest earned shall be released to them    249
immediately.    250

Should the Sellers fail to give Notice of Readiness by the date stipulated in line 81 or fail to be ready    251
to validly complete a legal transfer or comply with the provisions of Clause 8 as aforesaid they    252
shall make due compensation to the Buyers for
their loss and for all expenses together at the rate of LIBOR +2% with interest if their    253
failure is due to proven
negligence and whether or not the Buyers cancel this Agreement.    254

15.    Buyers' representatives    255

After this Agreement has been signed by both parties and the deposit has been lodged, the Buyers    256
have the right to place two representatives on board the Vessel at their sole risk and expense upon    257
arrival at                  on or about    258
These representatives are on board for the purpose of familiarisation and in the capacity of    259
observers only, and they shall not interfere in any respect with the operation of the Vessel. The    260
Buyers' representatives shall sign the Sellers' letter of indemnity prior to their embarkation.    261

16.    Arbitration    282

See Clause 19a)*    This Agreement shall be governed by and construed in accordance with    283
English law and
any dispute arising out of this Agreement shall be referred to arbitration in London in    264
accordance with the Arbitration Acts 1950 and 1979 or any statutory modification or    265
re-enactment thereof for the time being in force, one arbitrator being appointed by each    266
party. On the receipt by one party of the nomination in writing of the other party's arbitrator,    267
that party shall appoint their own arbitrator within fourteen days, failing which the decision of the    268
single arbitrator appointed shall apply. If two arbitrators properly appointed shall not agree    269
they shall appoint an umpire whose decision shall be final.    270

b)*    This Agreement shall be governed by and construed in accordance with Title 9 of the    271
United States Code and the Law of the State of New York and should any dispute arise out of    272
this Agreement, the matter in dispute shall be referred to three persons at New York, one to    273
be appointed by each of the parties hereto, and the third by the two so chosen; their    274
decision or that of any two of them shall be final, and for purpose of enforcing any award, this    275
Agreement may be made a rule of the Court.    276
The proceedings shall be conducted in accordance with the rules of the Society of Maritime    277
Arbitrators, Inc. New York.    278

c)*    Any dispute arising out of this Agreement shall be referred to arbitration at    279
                subject to the procedures applicable there.    280
The laws of         shall govern this Agreement.    281

*    16 a), 16 b) and 16 c) are alternatives; delete whichever is not applicable. In the absence of    282
deletions, alternative 16 a) to apply.    283

See also attached Clauses 17- 19

For and on behalf of    For and on behalf of
(Sellers)    (Buyers)

Name:    Name:

This document is a computer generated SALEFORM 1993 form printed by authority of the Norwegian Shipbrokers' Association, using software registered in the form used for plotting tables. In the event of any modification made to the pre-printed text of this document will be clearly visible. In the text of this original approved document shall apply. BIMCO and the Norwegian Shipbrokers' Association assumes no responsibility for any loss, damage or expense as a result of discrepancies between the original approved document and this computer generated document.

Execution Version

Rider Clauses

to

Memorandum of Agreement (the "Agreement")

between

Amazing Shipping Ltd.

and

ICON Amazing, LLC (the "Buyers")

in respect of

m.v. "AMAZING"

17    The Buyers (as owners) and the Sellers (as charterers) have entered into a bareboat charterparty (the "Charter") of even date herewith pursuant to which the Buyers have agreed to charter the Vessel to the Sellers on the terms and conditions contained in the Charter.  On delivery of the Vessel to the Buyers under this Agreement, the Vessel shall be simultaneously delivered by the Buyers to the Sellers under the Charter.

Unless otherwise defined in the Agreement or unless the context otherwise requires, all words and expressions defined in the Charter shall have the same meaning when used in this Agreement.

The obligation of the Buyers to take delivery of the Vessel under this Agreement and to pay the Purchase Price is subject to the Sellers (as charterers) taking simultaneous delivery of the Vessel under the Charter and the following conditions precedent being provided to the Buyers in a form and content in their discretion satisfactory to the Buyers):

17.1    one (1) certified true copy of the Certificate of Incorporation and Memorandum and Articles of Association (or equivalent constitutional documents) of the Sellers and the Parent Company;

17.2    one (1) certified true copy Minutes of the Board of Directors of the Sellers, approving and resolving (a) the sale of the Vessel in accordance with the terms of this Agreement and (b) the entry into the other Relevant Documents to which it is a party and the entry into all other documents contemplated by those Relevant Documents, and authorising the Directors of the Sellers, other authorised persons of the Sellers and appointed attorneys-in-fact of the Sellers to execute and sign this Agreement, the other Relevant Documents to which it is a party (together with all other documents contemplated by those Relevant Documents), any addenda to this Agreement, any documents in relation to the delivery of the Vessel to the Buyers, including, without limitation, the Bill of Sale, the Protocol of Delivery and Acceptance and any documents in relation to accepting the payment of and providing a receipt for the Purchase Price;

\LON1\JVB\11777353.1

17.3   one (1) certified true copy Minutes of the Board of Directors of the Parent Company approving and resolving the entry into the Relevant Documents to which it is a party and the entry into all other documents contemplated by those Relevant Documents, and authorising the Directors of the Parent Company, other authorised persons of the Parent Company and appointed attorneys-in-fact of the Parent Company to execute and sign the Relevant Documents to which it is a party and all other documents contemplated by those Relevant Documents;

17.4   original Power of Attorney for the Sellers appointing attorneys-in-fact to sell and deliver the Vessel on behalf of the Sellers and to exercise the powers stated in Clause 17.2;

17.5   original Power of Attorney for the Parent Company appointing attorneys-in-fact to execute any documents to be executed or to exercise any powers in relation to any transactions to be undertaken by the Parent Company in connection with the sale of the Vessel and to exercise the powers stated in Clause 17.3;

17.6   copies of the latest audited financial statements of the Sellers and the Parent Company;

17.7   one (1) original Commercial Invoice by the Sellers for the Purchase Price of the Vessel;

17.8   one (1) valuation of the Vessel dated no later than one (1) month before the Delivery Date from a broker acceptable to the Buyers certifying a value for the Vessel acceptable to the Buyers and the Mortgagee, assessed in such manner as the Buyers may require;

17.9   copies of all commercial and technical management agreements entered into between the Sellers and the Managers;

17.10  copies of all Insurance Policies and Certificates of Entry in compliance with the terms of the Charter and the requirements of the Mortgage, showing the Buyers as a co-assured and that the interests of the Mortgagee have been duly noted, with letters of undertaking issued as required by the Loan Agreement or related security documents;

17.11  the Charter, the General Assignment, the Parent Guarantee, and the Existing Time Charter, together with all other documents required by any of them, including, without limitation, all notices of assignment and/or charge and evidence that those notices will be duly acknowledged by the recipients in the format required;

17.12  one (1) original Protocol of Delivery and Acceptance under the Charter confirming the date and time of delivery of the Vessel from the Buyers to the Charterers;

17.13  evidence that any process agent appointed under any Relevant Document has accepted its appointment;

17.14  evidence that the Sellers have been released from all of their obligations (actual or contingent) under an existing loan facility dated 3 December 2007 entered into by and between, amongst others, DVB Bank SE (formerly known as and as universal successor in the title of DVB Bank N.V.) and the Sellers (as amended,

supplemented, novated and/or replaced from time to time), and that all Encumbrances created by the Sellers thereunder or in connection with the Vessel or the Building Contract have been duly reassigned and discharged, together with a certificate from the Sellers that, other than the Encumbrances created by the Relevant Documents to which they are a party, they have not granted or permitted to arise any other form of Encumbrance over any of their assets; and

17.15 a legal opinion in relation to the obligations of the Charterers under this Agreement and the Charter;

17.16 payment by the Sellers to the Buyers of the Arrangement Fee and the Documentation Expenses;

17.17 a certificate of confirmation of class for hull and machinery confirming that the Vessel is classed with the highest class applicable to vessels of her type with Bureau Veritas or such other classification society as may be acceptable to the Mortgagee free of recommendations affecting class; and

17.18 all other conditions precedent documents in relation to the Vessel and the Relevant Parties as required pursuant to the Loan Agreement and the Buyers receiving in full the loan facility related to the Vessel under the Loan Agreement no later than the Delivery Date.

18 Remaining stores, provisions, bunkers and lubricating oils onboard at the time of delivery shall remain the property of the Sellers.

19 Other than the Mortgagee or its affiliates, a person who is not a party to this Agreement has no right under the Contracts (Rights of Third Parties) Act 1999 to enforce or to enjoy the benefit of any term of this Agreement.

19.1 This Agreement and any non-contractual obligations arising from or in connection with this Agreement shall in all respects be governed by and interpreted in accordance with English law.

19.2 The Buyers and the Sellers each irrevocably agree that the courts of England are to have jurisdiction to settle any dispute arising from or in connection with this Agreement and relating to any non-contractual obligations arising from or in connection with this Agreement and that any proceedings may be brought in those courts.

19.3 Each of the Buyers and the Sellers irrevocably waive any objection which they may now or in the future have to the laying of the venue of any proceedings in any court referred to in this Clause and any claim that those proceedings have been brought in an inconvenient or inappropriate forum, and irrevocably agree that a judgment in any proceedings commenced in any such court shall be conclusive and binding on them and may be enforced in the courts of any other jurisdiction.

19.4 Without prejudice to any other mode of service allowed under any relevant law, the Sellers:

19.4.1 irrevocably appoint Geden Operations Limited, whose office is currently at 2nd Floor, 77 Gracechurch Street, London EC3V 0DL, United Kingdom

as its agent for service of process in relation to any proceedings before the English courts; and

19.4.2   agree that failure by a process agent to notify the Sellers of the process will not invalidate the proceedings concerned.

19.5   Without prejudice to any other mode of service allowed under any relevant law, the Buyers:

19.5.1   irrevocably appoint ICON Capital Corp. whose office is currently at 78 Pall Mall, London SW1Y 5ES, United Kingdom, as its agent for service of process in relation to any proceedings before the English courts; and

19.5.2   agree that failure by a process agent to notify the Buyers of the process will not invalidate the proceedings concerned.

19.6   Any communication to be made under or in connection with this Agreement shall be in English made in writing and, unless otherwise stated, may be made by fax, email or letter. If a communication is made by email, the party making such communication shall also simultaneously send that communication by fax.

19.7   The address, email address and fax number (and the department or officer, if any, for whose attention the communication is to be made) of each party to this Agreement for any communication or document to be made or delivered under or in connection with this Agreement are:

19.7.1   in the case of the Sellers, c/o Genel Denizcilik Nakliyati A.S., Yapi Kredi Plaza A Blok Kat 12, Levent, Istanbul, Turkey 34330  (email address: mehmetmat@gedenlines.com) (fax no: 90 212 325 5814) marked for the attention of: Mehmet Mat; and

19.7.2   in the case of the Buyers, c/o ICON Capital Corp. 100 Fifth Avenue, Fourth Floor, New York, NY 10011, USA (email address: DVerlizzo@ ICONCapital.com) (fax no. +1 (212) 418 4739) marked for the attention of David Verlizzo,

or any substitute address, fax number, department or officer as each party to this Agreement may specifically notify to the other parties to this Agreement by not less than five (5) Banking Days' notice.

19.8   Any communication or document made or delivered by one party to this Agreement to another under or in connection this Agreement will only be effective:

19.8.1   if by way of fax, when a transmission slip evidencing transmission of such fax is produced;

19.8.2   if by of email, when actually received by the recipient; or

19.8.3   if by way of letter, when it has been left at the relevant address or three (3) Banking Days after being deposited in the post postage prepaid in an envelope addressed to it at that address if it is being sent to an address in

the same country as the sender (or upon receipt if it is being sent internationally by post) or four (4) Banking Days after being handed to a reputable international courier service in an envelope addressed to it at that address if it is being sent internationally,

and, if a particular department or officer is specified as part of its address details provided under Clause 19.7, if addressed to that department or officer.

| For and on behalf of the Sellers | For and on behalf of the Buyers |
|---|---|
| | By: TEMC Complete Manager |
| Name: | Name: |

the same country as the sender (or upon receipt if it is being sent internationally by post) or four (4) Banking Days after being handed to a reputable international courier service in an envelope addressed to it at that address if it is being sent internationally,

and, if a particular department or officer is specified as part of its address details provided under Clause 19.7, if addressed to that department or officer.

| For and on behalf of the Sellers | For and on behalf of the Buyers |
|---|---|
| Name:   MEHMET MAT | Name: |

VLONLIVE11277353.1

5