

July 28, 2010

Mr. A. Tuğrul Tokgöz / Mr. Mehmet Mat
GENEL DENIZCILIK NAKLIYATI A.S.
Büyükdere Cad. Yapı Kredi Plaza, A Blok
K: 12 34330 Levent
Istanbul
Turkey

**RE: Letter Agreement for the purchase and leaseback of one Supramax bulk carrier for Geden Holdings Ltd.**

Gentlemen:

      Further to recent discussions between ICON Capital Corp. ("ICON") and Geden Holdings Ltd. ("Geden"), ICON is pleased to submit the following letter agreement for the purchase and leaseback of one Supramax bulk carrier being built at COSCO Zhoushan Shipyard (the "Vessel") for Geden. The material terms and conditions of the Transaction include but are not limited to, the provisions set forth below.

      As you may know, ICON is the third largest independent equipment leasing and financing company in the United States according to the 2009 Monitor 100 Report, and the largest privately-held independent equipment leasing and finance company in the United States. ICON is headquartered in New York City and has offices in Boston and London. ICON provides businesses with an array of specialty finance solutions that range from traditional leasing of equipment types such as construction, furniture, fixtures and equipment, information technology, manufacturing, marine, materials handling, medical, rolling stock and telecom to highly structured financial products for unusual asset types and emerging companies. ICON was established in 1985 and currently manages six publicly registered funds that have raised USD 1.1 billion to date and has sole management responsibility for over USD 2 billion financed assets since inception. While its funds have a diversified investment strategy, ICON has a particular specialty in maritime and offshore assets. To date, the Funds have participated in over USD 1.1 billion worth of transactions in the marine and offshore space with industry leaders such as Wilh. Wilhelmsen, American Eagle Tankers and Teekay Corporation.

      Of our six active funds, ICON Leasing Fund Twelve, LLC raised USD 347 million and our most recent fund, ICON Equipment and Corporate Infrastructure Fund Fourteen, L.P. is expected to raise up to USD 500 million. Accordingly, ICON has the necessary capital on hand to consummate the Transaction.

      The material terms of this Letter Agreement are as follows:

| | |
|---|---|
| **Transaction:** | The purchase of one (1) Supramax bulk carrier and subsequent bareboat charter back to Geden. |
| **Vessel:** | One (1) 57,000 DWT bulk carrier being built at COSCO Zhoushan Shipyard in China to be classed BV and delivered in [September] 2010. |
| **Purchase Price:** | USD 30,000,000 |
| **Purchaser:** | A special purpose subsidiary owned by one or more funds managed by ICON. |





| | |
|---|---|
| **Seller:** | Geden or a wholly-owned subsidiary thereof. |
| **Charterer:** | Geden or a wholly-owned subsidiary thereof. |
| **Guarantor:** | Geden shall guarantee all obligations of the Seller and the Charterer. |
| **Closing Date:** | On or before October 1, 2010. The Vessel will be delivered to Purchaser in international waters or such other location as may be mutually agreed by the parties. |
| **Charter:** | Purchaser agrees to charter the Vessel to Charterer and Seller agrees to cause Charterer to charter the Vessel from Purchaser for a period of seven (7) years (the "Charter Term") beginning on the Closing Date.  The Charter shall be governed by a charter agreement to be agreed upon and executed prior to the Closing Date. The Charter shall be a "net charter", meaning that Charterer will be responsible for maintaining and insuring the Vessel and that Charterer's obligation to pay the Charter Hire during the Charter Term will be a "come hell-or-high-water" obligation. |
| **Charter Hire:** | USD 12,700 per day, payable monthly in advance during the Charter Term. |
| **Purchase Options:** | Provided no event of default has occurred and is continuing, Charterer shall have the option to purchase the Vessel as is, where is on the following anniversary dates of the Closing Date:<br><br>4th Anniversary: USD 25,200,000 plus any swap or break funding costs<br>5th Anniversary: USD 23,625,000 plus any swap or break funding costs<br>6th Anniversary: USD 22,050,000 plus any swap or break funding costs |
| **Purchase Obligation:** | Upon expiry of the Charter Term, Charterer shall have the obligation to purchase the Vessel as is, where is for USD 21,150,000. |
| **Value Maintenance:** | If the fair market value of the Vessel falls below 125% of the Purchaser's non-recourse financing during years one and two of the Charter Term or 130% thereafter, Charterer shall have the obligation to provide additional security and/or make an additional Charter Hire payment within 30 days in order to satisfy the relevant ratio.<br><br>In the event that an additional Charter Hire payment is made, the Purchase Option and Purchase Obligation amounts will be reduced by the amount of the additional Charter Hire payment amount. |
| **Security:** | Usual and customary for a transaction of this type including but not limited to:<br>• Assignment of insurances. Proceeds from insurance for amount less than TBD to be paid directly to the Charterer unless there is a total loss or an event of Charter Default;<br>• Assignment of any time charter in excess of 12 months;<br>• Pledge of the shares of the Charterer; and<br>• On demand irrevocable and unconditional guarantee from the Guarantor. |
| **Conditions Precedent:** | Usual for transactions of this type and others to be reasonably specified by the Purchaser, including but not limited to:<br>• Purchaser securing non-recourse financing on terms and conditions acceptable to Purchaser; |

**ICON**

- Purchaser shall have completed due diligence with respect to the Seller, the Guarantor, the Charterer, the Vessel and shall be satisfied in its sole discretion with the result of such due diligence;
- Execution of all transaction documents;
- Receipt of favorable legal opinion from counsel for the Charterer;
- Receipt of favorable legal opinion from counsel for the Purchaser;
- Satisfactory "come hell-or-high-water" Charter according to Barecon 2001 with additional clauses;
- Satisfactory insurances with an insurer acceptable to the Purchaser;
- Flag of the Vessel to be acceptable to the Purchaser;
- Vessel to be classed by an acceptable Classification Society;
- An independent appraisal of the Vessel indicating a fair market value of not less than the Purchase Price;
- Accuracy of representations and warranties;
- Purchaser's satisfactory analysis of the tax consequences associated with purchasing and chartering the Vessel;
- Absence of Material Adverse Effect; and
- Payment of fees and expenses.

**Affirmative Covenants:** Usual for transactions of this type and others to be reasonably specified by the Purchaser, including but not limited to:
- delivery of financial statements of the Charterer and of the Guarantor;
- reports, officers' certificates and other information reasonably requested by the Purchaser;
- payment of other obligations;
- continuation of business and maintenance of existence and material rights and privileges;
- compliance with laws and material contractual obligations related to the Vessel and its operation;
- maintenance of property and insurance;
- maintenance of books and records;
- right of the Purchaser to inspect property and books and records;
- notices of defaults, litigation and other material events related to the Vessel and its operation;
- compliance with environmental laws related to the Vessel and its operation;
- all Charter payments to be made in full and for the account of the Purchaser. Such payments shall be made without any offset or counterclaim and free and clear of any deduction or withholding whatsoever;
- Charterer to accept the Vessel simultaneously with delivery of the Vessel to the Purchaser;
- Unless specifically approved by the Purchaser and its lender: Charterer to technically and commercially manage the Vessel and shall at all times comply with all relevant international and domestic regulations pertaining to the operation of a bulk carrier;
- Upon an Event of Default the Purchaser to have the right to change the Vessel manager and the flag of the Vessel;
- Charterer to indemnify Purchaser for the costs of MII and MIAPP insurance if such is required by the Purchaser's financiers; and
- The Charterer and the Guarantor shall ensure that the Charterer is at all



times wholly owned directly or indirectly by the Guarantor.

| | |
|---|---|
| **Financial Covenants on Guarantor**: | • Market Adjusted Net Worth of not less than USD 250 million;<br>• The ratio of EBITDA to Debt Service is not less than 1.0x;<br>• The ratio of Market Adjusted Net Worth to Market Adjusted Total Assets is not less than 10%;<br>• Cash on hand and Marketable Securities is not less than US 15 million; and<br>• Current Assets always exceed Current Liabilities. |
| **Negative Covenants:** | TBD. |
| **Events of Default:** | Usual for transactions of this type and others to be reasonably specified, including but not limited to non-payment of Charter hire when due; material inaccuracy of representations and warranties; violation of covenants; material cross-default; bankruptcy events; material judgments; actual or asserted invalidity of any guarantee or security document or security interest; failure of the Charterer and Guarantor to honor any obligations under the Charter; and change of control. |
| **Earnest Money Deposit:** | At the time of acceptance of the terms set out in this letter the Borrower shall remit to the Lender a USD 100,000, refundable Earnest Money Deposit. The Earnest Money Deposit will be used to pay for ICON's out of pocket expenses including, inspection, appraisal, third party legal fees, and other expenses in connection with the transaction. Such application shall be made regardless of whether the transaction is consummated. The remaining balance, if any, of the Earnest Money Deposit shall be returned to the Borrower after payment of all expenses. In the event that the transaction fails to fund for any reason other than (a) ICON's decision not to issue a commitment on substantially the same terms and conditions as contained herein or (b) ICON's gross negligence or willful misconduct, ICON shall retain the entire original amount of the Earnest Money Deposit as liquidated damages for loss of bargain and not as a penalty and Geden shall be separately responsible for all of ICON's expenses. |
| **Documentation Expenses:** | All reasonable and documented out-of-pocket costs, legal expenses and fees in relation to the Transaction shall be paid by the Charterers whether the contemplated transaction is concluded or not. |
| **Arrangement Fee:** | Two percent (2.0%) of the Purchase Price of which half shall be payable upon the issuance from ICON to Geden of a formal commitment letter and half upon execution of the Transaction documents. |
| **Legal Counsel:** | TBD |
| **Law:** | English Law |
| **Exclusivity:** | Geden shall grant to ICON the exclusive right to finance the Transaction for a period of thirty (30) days (the "Exclusivity Period") from the date of issuance of a commitment letter. Each of Charterer and Guarantor agree not to discuss the Transaction, or the terms and conditions hereof with any party (except with its relevant officers and employees, its outside legal counsel and its outside accounting firm as required to satisfy the terms and conditions of this letter). |

I would like to express ICON's enthusiasm for the Transaction and ensure you that we are committed to working towards an expeditious close. We are prepared to enter into direct discussions with



you and would recommend a meeting at your offices or in New York during the coming weeks finalize terms and further expedite the satisfaction of the conditions precedent. We look forward to working with you on this opportunity and strongly believe that a successful conclusion of this Transaction will establish a long-lasting and mutually beneficial relationship between ICON and Geden.

Please indicate your acknowledgment of, and agreement to, the foregoing by signing below and returning a copy of this letter to us no later than the close of business on August 4 2010.


Sincerely,



Sean Connor
Senior Director
ICON Capital Corp.

ACKNOWLEDGED & AGREED

Geden Holdings Ltd.

BY:      _____
Name:
Title:

Date:    _____

SIGNATURE PAGE TO LETTER AGREEMENT DATED AUGUST __, 2010