UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ICON AMAZING, LLC | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | Civil Action No. 4:13-cv-01449 |
| | § | Admiralty Rule 9(h) |
| AMAZING SHIPPING, LTD. and | § | |
| GEDEN HOLDINGS, LTD. | § | |
| | § | |
| Defendants. | § | |

## RESPONSE TO DEFENDANTS' MOTION TO VACATE ATTACHMENT AND DISMISS COMPLAINT

Plaintiff, ICON Amazing, LLC ("ICON"), appearing through undersigned counsel, opposes the Motion to Vacate Attachment and Dismiss Complaint filed by Geden Holdings, Ltd. ("Geden").[1]  Geden's Motion misconstrues the relevant contracts, misapplies Geden's own authorities, and completely disregards Supreme Court precedent.  These flaws in Geden's argument lead Geden to the equally flawed conclusion that a charter party contract for a vessel by which Geden's wholly owned subsidiary, Amazing Shipping, Ltd. ("Amazing Shipping"), agreed to "charter" and "operate" ICON's vessel, the M/V AMAZING ("AMAZING" or "Vessel") in international trade in exchange for daily "charter hire," is not a

---

[1] At the outset, ICON notes that Geden's motion presents a fairly barebones challenge with hardly any discussion of case law and no legal standard.  Geden's Motion is presently set for hearing at 3:00 p.m. on Monday, June 10, 2013. In the event that Geden files a more substantial brief over the weekend, ICON reserves its right to address any new or more developed arguments by way of a supplemental memorandum and, if necessary, to request a continuance of Monday's hearing.

maritime contract.  Based on the law and the facts Geden's arguments should be rejected and its Motion to Vacate and Dismiss should be DENIED.

## **INTRODUCTION**

This is a dispute about two contracts: one a maritime charter party in which Amazing Shipping pledged to pay $13,500.00 per day to charter the AMAZING for a period of 7 years and to man, victual, and operate her in the international trade of goods by sea, and a second in which Geden pledged to guarantee Amazing Shipping's performance of its obligations as a charterer. Both are maritime contracts, and both are subject to the Court's admiralty jurisdiction.

At this very moment, pursuant to the charter party, ICON's Vessel is plying the waters of the world's oceans, flying Geden's flag and carrying bulk cargoes owned by shippers and sub-charterers who have contracted with Geden to transport cargo by ocean carriage.  The charter party has no other purpose than to set forth the parameters of the use of the vessel for the carriage of ocean cargo, and the vessel has no other purpose than to carry the cargo.  However, Geden refuses to pay ICON for its ongoing use of the Vessel, as required under the charter party. As a result, ICON sought, and obtained, a writ of attachment of Geden's property. Incredibly, Geden urges the Court to ignore all of these facts and to conclude that the claim before it has nothing to do with maritime commerce or the use of the Vessel.   Because Geden's argument contradicts the facts, Supreme Court

precedent, common sense, and indeed its own authorities, the only just response is to deny Geden's motion.

ICON's arguments are as follows:

1) The Supreme Court has held that a contract that has "reference to maritime service or maritime transactions" or that "relates to ships and vessels, masters and mariners, as the agents of commerce is a maritime contract." The contract between ICON and Amazing Shipping is for the charter of a vessel, the employment of her crew, and the terms of her trade in ocean commerce. The contract is as traditionally and uniquely maritime as can be and is absolutely maritime in nature under the Supreme Court's test, foreclosing Geden's argument that admiralty jurisdiction does not exist.

2) Alternatively, even if the Court finds that there are both maritime and non-maritime components of the contract, the maritime components are easily separable and ICON's claim relates to the most obviously maritime of all agreements: the charter of a vessel for hire. This claim is cognizable within the Court's admiralty jurisdiction even if other hypothetical claims that *could* arise from the contract in the future might not be, rendering Geden's Motion to Vacate and Dismiss meritless.

3) Finally, the only contract to which Geden is actually a party is a guarantee agreement, which guarantees Amazing Shipping's performance of a

maritime charter agreement – *not* a sale agreement.  Because a guarantee of a maritime obligation is itself a maritime contract, the court has admiralty jurisdiction over ICON's claims against Geden as guarantor, and the Motion to Vacate and Dismiss must be denied.

Geden cannot deny the truth of the substantive allegations of ICON's complaint.   It admits the charter hire is owed, but refuses to pay.  Its only defense to attempt to avoid payment or the posting of security is to challenge the Court's authority by suggesting that Amazing Shipping's breach of its obligation to pay daily charter hire for the use of ICON's Vessel is not a maritime issue.  If the Court accepts this bizarre conclusion it will effectively grant Amazing Shipping and Geden license to continue breaching the charter party and guarantee agreement with impunity.

## FACTUAL BACKGROUND

ICON is the Owner and Amazing Shipping is the Bareboat Charterer of the M/V AMAZING and, despite Geden's misrepresentations, this dispute has everything to do with Amazing Shipping's breach of its obligations under a vessel charter agreement and absolutely nothing to do with the sale of any vessel.[2] Geden's only defense hinges on its ability to obscure and confuse these simple facts.  ICON attempts to straighten them out below.

---

[2] *See* Bareboat Charter Party, attached as Exhibit A, p. 1.

On October 1, 2010 – more than two years before the breach complained of in ICON's Verified Complaint – ICON purchased the AMAZING from Amazing Shipping for the price of $33,500,000.00.[3]   The terms of the sale were memorialized in a Memorandum of Agreement (the "MOA") which set forth a purchase price, a delivery date, and other terms relevant to the sale/purchase of the Vessel.  As with any other sale, the price was paid, title changed hands, and the entirety of the transaction was completed on the date of sale– a fact evidenced by a Commercial Invoice, a Bill of Sale, and a Protocol of Delivery and Acceptance, all signed by Amazing Shipping.[4]   There is no question that since October 1, 2010, ICON is by all accounts and for all purposes the Owner of the AMAZING.

It is true - and completely unremarkable - that ICON's agreement to purchase the Vessel was induced by a reciprocal promise by Geden to charter the Vessel back from ICON on bareboat terms for a period of seven (7) years.  Concurrent with the MOA outlining the parties' obligations, on October 1, 2010 (*i.e.*, the date of the sale), the parties also executed a "Bareboat Charter Party" outlining the parties' entirely separate obligations from October 1, 2010, through October 1, 2017 (*i.e.*, the term of the charter party).

It is also true that the Bareboat Charter Party was made "conditional upon" delivery of the Vessel from Amazing Shipping to ICON pursuant to the MOA.

---

[3] *See* Memorandum of Agreement, attached as Exhibit B, p. 1.
[4] *See* Documents of Title, attached as Exhibit C *in globo*.

Though Geden would have the Court believe this is evidence of some complex scheme orchestrated by ICON, the truth is far less salacious: had Amazing Shipping breached the MOA by failing to sell and deliver the Vessel to ICON, ICON could not very well have met its obligation to charter the Vessel to Amazing Shipping.  Thus, absent a provision making ICON's performance of the Bareboat Charter Party contingent on Amazing Shipping's performance under the MOA, ICON could have been forced into a breach of charter through no fault of its own simply because it would not have owned or possessed the vessel it had promised to deliver.

The Bareboat Charter Party – which is the only existing agreement between ICON and Amazing Shipping and which has defined their relationship and obligations to one another over the past two years – plainly and repeatedly identifies ICON as the Vessel's "Owner" and Amazing Shipping as her "Bareboat Charterer."  Likewise, and critically important to the Court's consideration of Geden's motion, the Bareboat Charter Party, like any charter party, makes absolutely clear that its purpose is to further maritime trade and commerce by obligating Amazing Shipping to operate the vessel, to hire and employ seamen as her crew, and to use her carrying capacity to transport cargoes in international trade – all in exchange for daily charter hire.

Two points regarding the MOA and Bareboat Charter Party bear mention. First, the MOA terms were fully complied with and the MOA was thereby extinguished on October 1, 2010.  Second, though the Bareboat Charter Party contains a repurchase provision, that provision does not even become an option until the 4th year of the charter's performance, which is more than a year away. As the MOA and the repurchase provisions are for all intents and purposes nonexistent at the present time and, regardless, have absolutely nothing to do with ICON's claims, they are completely irrelevant to the Court's jurisdiction.  Geden's entire argument to the contrary is a red herring based on innuendo and misdirection.

Because ICON was not familiar with Amazing Shipping's commercial reputation, ICON required as a provision of the Bareboat Charter Party that Amazing Shipping's corporate parent, Geden, guarantee Amazing Shipping's obligations under that agreement.  Toward that end, ICON and Geden entered into a second maritime contract – the "Geden Guarantee" – under which Geden pledged to "irrevocably and unconditionally guarantee the due and punctual observance and performance by the Bareboat Charterer [Amazing Shipping] of all its obligations under the Bareboat Charter."[5]  Notably, but understandably, the Geden Guarantee makes no mention anywhere of the MOA.  This is precisely because when the

---

[5] *See* Geden Guarantee Agreement, attached as Exhibit D, ¶ 3.1.

MOA was fully performed  the parties' relationship as Buyer and Seller  ended , while their relationship as Owner and Charterer under the Bareboat Charter Party was just beginning.  Geden was obligated only to guarantee the *future* performance of the maritime charter, not the *past* performance of the sale agreement, which performances were and are entirely separate from one another.

In further hopes of confusing the Court as to the difference between the Bareboat Charter Agreement and the MOA, Geden suggests that the two separate contracts constitute a single inseparable agreement because "[t]he very first page of the [Bareboat Charter Party] expressly requires it to be consistent with and 'as per' the MOA."[6]  This argument is superficial; the two appearances of the phrase "per MOA" that on which Geden relies refer to the "Particulars of the Vessel" and the "Place of Delivery", indicating nothing more than that the two contracts pertained to the same vessel and that delivery would occur in the same manner.  This is a simple and expedient means of avoiding ambiguity between two contracts pertaining to the same property and hardly conflates the contracts into a single legal document.

## Amazing Shipping's Breach of the Bareboat Charter Agreement

Although Geden seeks to confuse the Bareboat Charter Party with the MOA, there is absolutely no confusion that while the MOA was fully performed years

---

[6] *See* Geden's Motion to Vacate, Rec. Doc. 22, p. 5.

ago, Amazing Shipping is presently and undeniably in breach of the Bareboat Charter Party.

Pursuant to the Bareboat Charter Party, Amazing Shipping is obligated to pay ICON "charter hire" of $13,500.00 per day.  As in any maritime bareboat charter scenario, Amazing Shipping pays the "running" or operating costs for the vessel, ICON submits monthly charter hire statements to Amazing Shipping/Geden, and Amazing Shipping operates the Vessel.  This is a standard maritime arrangement that has existed in the shipping industry for centuries.

However, beginning on November 1, 2012, Amazing Shipping stopped paying the charter hire as due, while continuing to possess and operate the Vessel as bareboat charterer.  When ICON's repeated demands for full payment were unsuccessful, ICON exercised its lien rights as Owner under the Bareboat Charter Party and, in effect, garnished the payments owed by Amazing Shipping's sub-charterers to Amazing Shipping.  With Geden's agreement, the sub-charterers of the AMAZING are now paying hire to ICON directly, rather than to Amazing Shipping/Geden.  However, those monthly payments represent only 65% of the hire due to ICON by Geden per month so Amazing Shipping remains in breach of the Bareboat Charter Party.  As of the date of ICON's Verified Complaint Amazing Shipping/Geden owed more than $1.4 Million in delinquent charter hire

– an amount which grows every day with Amazing Shipping's continued refusal to pay charter hire and Geden's refusal to abide by the Geden Guarantee.

## LAW AND ARGUMENT

**I.   ICON's claim is maritime in nature because it arises out of a maritime contract.**

**A. The Supreme Court has rejected Geden's bright line approach and held that contracts are maritime in nature so long as they "have reference to maritime service or maritime transactions."**

Geden's motion includes but a single argument against the Court's exercise of jurisdiction, *to wit*, that the Bareboat Charter Party is not a maritime contract and does not confer admiralty jurisdiction upon the Court by its breach.  To support that argument, Geden relies on inapposite, misapplied, outdated, and even non-precedential caselaw, completely ignoring more recent Supreme Court authority recognizing the broad scope of contracts subject to the admiralty jurisdiction.  The only two Fifth Circuit authorities cited in Geden's motion are *S.C. Loveland, Inc. v. East West Towing, Inc.* and *Clem Perrin Marine Towing, Inc. v. Panama Canal Co.* – neither of which have anything to do with the facts of this case, both of which state a bright line rule that "[c]ontracts for the sale of vessels are not within admiralty jurisdiction, but charter parties are," and the latter of which described the question of whether admiralty jurisdiction existed in the case before it as

"irrelevant".[7]   Notably, both of these decisions also pre-date by twenty years the Supreme Court's relevant decision regarding admiralty contract jurisdiction.

In its 2004 decision in *Norfolk Southern Railway Co. v. Kirby* the Supreme Court flatly rejected the "bright line" approach Geden and all of Geden's dated authorities use to distinguish between maritime and non-maritime contracts.   *Kirby* involved a dispute between an Australian shipper and U.S. railroad operator "arising out of a rail accident somewhere between Savannah and Huntsville."[8]   The threshold issue facing the Court was whether the dispute was subject to the Court's admiralty jurisdiction – a dispute that centered on whether two contracts of affreightment calling for shipment of cargo from Sydney to Huntsville *via* the port of Savannah were maritime or non-maritime.   In holding that the scope of contracts subject to admiralty jurisdiction was broad enough to include a contract for inland carriage by rail of a cargo that had previously been shipped by sea, the Court announced a standard for admiralty contract jurisdiction that rejected the bright line approach of prior jurisprudence and easily subsumes the contract at issue here:

> Our cases do not draw clean lines between maritime and nonmaritime contracts. We have recognized that [t]he boundaries of admiralty jurisdiction over contracts – as opposed to torts or crimes – being conceptual rather than spatial, have always been difficult to draw. …   [T]he answer depends upon ... the nature and character of the

---

[7] *Clem Perrin Marine Towing, Inc. v. Panama Canal Co.*, 730 F.2d 186, 189 (5th Cir. 1984); *S. C. Loveland, Inc. v. East West Towing, Inc.* 608 F.2d 160 (5th Cir. 1979).
[8] *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 23-24, 125 S. Ct. 385, 393, 160 L. Ed. 2d 283 (2004)

contract, and the true criterion is whether it has reference
to maritime service or maritime transactions.[9]

The Court went on to "reiterate[] that the 'fundamental interest giving rise to maritime jurisdiction is the protection of maritime *commerce*.'"[10]   With this standard in mind, the Court held that two bills of lading which contemplated both ocean and inland carriage of cargo were maritime contracts "because their primary objective is to accomplish the transportation of goods by sea from Australia to the eastern coast of the United States."[11]

In the aftermath of *Kirby*, courts – including the Fifth Circuit – have routinely emphasized that a broad conceptual approach to admiralty contract jurisdiction is required and that "[t]here is no bright-line rule used to determine whether a contract is maritime in nature."[12]   The Fifth Circuit has instead reiterated that "[a] maritime contract is one relating to a ship in its use as such, or to commerce or navigation on navigable waters, or to transportation by sea or to maritime employment."[13]   That is precisely the scenario before Your Honor.

---

[9] *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. at 23-24 (internal quotations omitted).  *See also Kossick v. United Fruit Co.*, 365 U.S. 731, 736, 81 S.Ct. 886, 890, 6 L.Ed.2d 56 (1961) ("The principle by reference to which the cases are supposed to fall on one side of the line or the other is an exceedingly broad one.  The only question is whether the transaction relates to ships and vessels, masters and mariners, as the agents of commerce.").

[10] *Id.* at 25.

[11] *Id.* at 24.

[12] *Thibodeaux v. Vamos Oil & Gas Co.*, 487 F.3d 288 (5th Cir. 2007).

[13] *Gulf Oil Shell & Aggregate LP v. Newlin*, 623 F.3d 235, 240 (5th Cir. 2010) (*quoting J.A.R., Inc. v. M/V LADY LUCILLE*, 963 F.2d 96, 98 (5th Cir. 1992)).  *See also  Alphamate Commodity GMBH v. CHS Europe SA*, 627 F.3d 183, 186 n.4 (2010) (*quoting Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 674, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982)) ("[T]he primary focus of admiralty jurisdiction is unquestionably the protection of maritime commerce….").

The Southern District of New York – long recognized as a preeminent source for Rule B authorities - has even gone so far as to recognize that *Kirby* explicitly *reversed* the rule that vessel sale agreements are non-maritime, holding that "a contract for the purchase of a launched ship that has been plying the seas for some time… has a distinctly salty flavor" and is "a maritime contract."[14]

The Bareboat Charter Party between ICON and Amazing Shipping overflows with the "salty flavor" the Supreme Court recognized as the hallmark of a maritime agreement, rendering Geden's suggestion that the contract is non-maritime entirely unfounded.  Under the Bareboat Charter Party, Amazing Shipping agreed:

- to "employ [the Vessel] in lawful trades for the carriage of suitable lawful merchandise in such waters and environments as the Vessel's capabilities and specifications allow" within specified geographical trading limits;[15]

- to "man, victual, navigate, operate, supply, fuel and, whenever required, repair the Vessel

- in exchange for use of the Vessel's, to "pay charter hire ('**Charter Hire**') to Owners monthly in advance at the rate of $USD 13,500";[16]

- to respect defined trading limits prohibiting the Vessel from trading in "any waters with US Embargo" or "carrying illicit or prohibited goods";[17]

---

[14] *Kalafrana Shipping Ltd. v. Sea Gull Shipping Co.,* 591 F.Supp.2d 505, 510 (S.D.N.Y. 2008).
[15] *See* Bareboat Charter Party, Ex. A, ¶ 6.
[16] *Id.*, ¶ 34
[17] *Id.*, p. 1, Box 20; ¶ 6.

- to "maintain the Vessel, her machinery, boilers, appurtenances and spare parts in a good state of repair;"[18]
- to issue Bills of Lading for cargoes carried by the Vessel[19];
- to maintain insurance "against hull and machinery, war and Protection and Indemnity risks" (*i.e.*, ocean marine insurance).[20]

In addition to these "salty" obligations on Amazing Shipping's part, the Bareboat Charter Party contains provisions governing the vessel's loss due to perils of the sea[21], authorizing Amazing Shipping to "sub-charter the Vessel"[22], and granting Amazing Shipping the right to use the Vessel to perform maritime salvage.[23]

In sum, the Bareboat Charter Party provides that for a period of seven (7) years Amazing Shipping/Geden will "charter", "use", "pay for", "repair", "man, victual, navigate, operate, supply, fuel," "maintain", and if they so choose "sub-charter" an ocean-going "bulk carrier" for the purpose of "carrying suitable lawful merchandise" in "worldwide" waters – and yet Geden argues that the purpose of the Bareboat Charter Party is not "to accomplish the transportation of goods by sea" and that the agreement has nothing to do with "maritime commerce".

---

[18] *Id.*, ¶ 10(a)(i).
[19] *Id.*, ¶ 23.  It bears mention that an ocean bill of lading is itself a maritime contract.  *E.g.*, *Kirby*, 543 U.S. 14, 23-24, 125 S. Ct. 385, 393, 160 L. Ed. 2d 283 (2004).
[20] *Id.*, ¶ 13.
[21] *Id.*, ¶ 20.
[22] *Id.*, ¶ 48.
[23] *Id.*, ¶ 19.

Because this argument is meritless on its face, Geden's Motion fails *ab initio* and should be denied.

**B. The Bareboat Charter Party is not a "sale agreement."**

Even assuming *arguendo* that Geden could return admiralty jurisdiction to the pre-*Kirby* days of bright line tests and restrictive labels rather than consideration of the relationship between a contract and maritime commerce, Geden's motion would still lack merit because it attempts to re-write the Bareboat Charter Party as a sale agreement – which it decidedly is not.

Both pre- and post-*Kirby*, courts have always recognized that a vessel charter agreement is a maritime contract.[24]   The primary purpose of the Bareboat Charter Party – and the only purpose relevant to ICON's claim - is to effectuate a bareboat charter of the Vessel. Admiralty jurisdiction therefore unquestionably exists over ICON's claim.

Geden's attempt to misconstrue the Bareboat Charter Party as a sale agreement is misguided.   As discussed above, the sale agreement between ICON and Amazing Shipping (*i.e.*, the MOA) was fully performed on October 1, 2010, when ICON paid Amazing Shipping $33,500,000 for the purchase of the Vessel and Amazing Shipping delivered the Vessel to ICON.  Geden's claim that Amazing Shipping is somehow breaching that already performed sale agreement rather than

---

[24] *E.g.*, *Kossick v. United Fruit Co.*, 365 U.S. 731, 735 (1961) ("Without doubt a contract for hire either of a ship or of the sailors and officers to man her is within the admiralty jurisdiction."); *Jack Nielson, Inc. v. Tug Peggy*, 428 F.2d 54, 55 (5th Cir. 1970); *Becker v. Tidewater, Inc.*, 586 F.3d 358, 366 (5th Cir. 2009).

the Bareboat Charter Party that has been the only agreement in place between the parties for the last two years is therefore meritless.

Likewise, Geden's attempt to construe the two contracts as one-and-the same is not supported by any authority or reason: the contracts were drawn up separately, performed at different times, and contain entirely separate obligations (one to "sell" a vessel for a sum certain, the other to "charter" a vessel for a daily rate). The fact that the two agreements refer to the same property and that the Bareboat Charter Party stipulated that ICON would not be required to charter the Vessel to Amazing Shipping unless it in fact became the *owner* of the Vessel first does not render the two agreements one.  On the contrary, the contingency provision of the Bareboat Charter Party was necessary *precisely because* the two contracts embodied separate and independent agreements – had the contracts been joined, there would have been no need to state that ICON's performance would be excused if Amazing Shipping failed to perform because the fundamental nature of contracts is that one party's breach excuses the other's performance![25]

### C. Geden's own authority offers no support (and actually rejects) Geden's position.

While ignoring the Supreme Court's decision in *Kirby* and attempting to re-write the Bareboat Charter Party Geden offers only a handful of authorities, none of which even remotely support the conclusion Geden asks the Court to reach.

---

[25] See Vol. 11, Williston on Contracts, 3rd Ed., § 1301 and § 1305.

The decision in *All Car Leasing* – what Geden strangely refers to as "the controlling vessel sale case law" – is an unpublished decision by the Ninth Circuit Court of Appeals.  As such, the decision is neither controlling nor even actual *authority*; Rule 36-3 of the Ninth Circuit Rules plainly states that "[u]npublished dispositions and orders of this Court are not precedent" and, in the case of decisions issued prior to 2007 (such as Geden's twenty-four year old *All Car Leasing* case) "may not be cited to the courts of this circuit."[26]

Although Geden's citation to the *All Car Leasing* decision is therefore improper, having raised the decision, Geden should be bound to its effect.  In support of its argument that a contract was a lease, rather than a sale, the Plaintiff in *All Car Leasing* offered correspondence and statements between the parties in which both parties had referred to and characterized the subject agreement  as a "lease".  Both the district court and the Ninth Circuit "properly recognized that evidence of the labels the parties gave the agreement was of limited legal significance, because the focus is upon the *substance* of the parties' agreement."[27] Similarly, Geden's heavy reliance on emails exchanged between the parties' commercial (rather than legal) representatives during their efforts to amicably resolve this dispute do not define the contract at issue.  Geden's insistence on

---

[26] Federal Rules of Appellate Procedure, Ninth Circuit Rules, 36-3, available at http://cdn.ca9.uscourts.gov/datastore/uploads/rules/rules.htm.
[27] *All Car Leasing Service Co. v. Campbell*, 912 F.2d 468 (9th Cir. 1990).

ignoring the Supreme Court's instructions and reverting to a War of Labels is also entirely unproductive – there are myriad examples of Geden itself treating the Bareboat Charter Party as precisely that: a charter agreement.[28]

In addition to the Ninth Circuit's unpublished decision in *All Car Leasing*, Geden's only authorities are: two Fifth Circuit cases that, as set forth above, are completely inapposite and arguably abrogated by *Kirby*[29]; and Sixth Circuit and Louisiana district court decisions which, as explained below, actually *refute* Geden's position.  Lacking authority and being inconsistent with the facts, Geden's motion must be denied.

## II. Alternatively, admiralty jurisdiction exists because the maritime aspects of the Bareboat Charter Party are easily separable from any non-maritime aspects.

Even if the charter party were held to contain mixed maritime and non-maritime obligations, this does not render it a non-maritime contract where, as here, the maritime obligations are easily separable.[30]

---

[28] For instance:
1) Geden's Restructuring Process Update #9 lists its non-payment of the Bareboat Charter Party under the category "Deferrals Bareboat", *not* "Deferrals Banks." *See* Process Update, attached as Exhibit E, p. 7, 14.
2) Geden's Restructuring Proposal identifies the AMAZING agreement as a "Bareboat", proposes a revision of the "bareboat rates", refers to Icon as "BB Owner", and distinguishes between its obligation to ICON as a "Bareboat" rather than a "Debt" obligation.  *See* Restructuring Proposal, attached as Exhibit E, p. 13, 42.
3) On November 29, 2 012, as part of an audit, ICON sent Geden a report confirming the terms of the "lease agreement… regarding the Bareboat Charter" of the AMAZING, which spelled out the lease term, monthly payment, and "rent paid" – an audit that Geden signed without comment, indicating its concurrence that the AMAZING was on lease or charter.  *See* Audit Report, attached as Exhibit F.
   In sum, there are ample documents wherein Geden acknowledged that the Bareboat Charter Party is a charter/lease, not a sale agreement, so Geden's argument fails even under that outdated standard.
[29] *See* discussion of *S.C. Loveland, Inc. v. East West Towing, Inc.* and *Clem Perrin Marine Towing, Inc. v. Panama Canal Co.*, Section I(A), *supra*.
[30] *E.g.*, *Alphamate Commodity GMBH v. CHS Europe SA*, 627 F.3d 183, 187 (5th Cir. 2010) ("Alternatively, 'if a contract's maritime obligations are separable from its non-maritime aspects and can be tried separately without

Geden's own authority in *Parcel Tankers, Inc. v. M/T STOLT LUISA PANDO* confirms that the chartering aspects of the Bareboat Charter Party are readily separable from any sale aspects and, therefore, that ICON's position is absolutely correct.  The court in *Parcel Tankers* was faced with two contracts: "(1) a five year time charter of the vessel which named Plaintiff as the charterer; and (2) a Purchase Option contract for the sale of the Vessel to [Plaintiff]."[31]  The suit before the court was brought after the Plaintiff exercised its option to purchase the vessel but defaulted on its payment, causing the seller to withhold delivery of the vessel.

In resolving the defendant/seller's challenge to jurisdiction, the court recognized (again, pre-*Kirby*) that contracts for the *sale* of a ship are not maritime contracts while contracts for the *charter* of a ship are.[32]  However, the court further recognized that "[w]here a contract contains some provisions which are maritime in nature and other provisions which are not, a court should sever the claims based upon the maritime provisions and exercise jurisdiction over them, while dismissing the non-maritime claims."[33]  Under this rule, the Court held that the Plaintiff's claim was non-maritime *because it arose exclusively out of the non-maritime Purchase Option,* not *the charter agreement:*

---

prejudice to the other, admiralty jurisdiction will support trial of the maritime obligations.'") (*quoting Lucky-Goldstar, Intern'l (America), Inc. v. Phibro Energy Intern'l, Ltd.*, 958 F.2d 58, 59 (5th Cir. 1992))
[31] *Parcel Tankers*, 1990 WL 257638, *1 (E.D.La. Jul. 13, 1990).
[32] *Id.* at 1-2.
[33] *Id.* at *2.

> The sole basis for Plaintiff's claim, however, is the alleged failure of Defendants to comply with the Purchase Option, which was incorporated by reference into the Charter. This court holds, therefore, that the substance of Plaintiff's Complaint clearly involves a contract of sale for the Vessel, which is not maritime in nature.
> …
> This court must therefore sever the non-maritime Option agreement from the rest of the Charter, and since this claim is based solely on a non-maritime clause of the Charter, this court does not have admiralty jurisdiction over Plaintiff's claim.[34]

The situation between ICON and Amazing Shipping is precisely reversed: ICON's claim is based on Amazing Shipping's failure to pay charter hire owed under the Bareboat Charter Party, *not* the future purchase option provided for elsewhere in the agreement. That purchase option is completely irrelevant to ICON's claims, and does not even exist until the end of the fourth year of the charter agreement (which is only two years old). Under Geden's own authority, then, the Court is compelled to enforce Amazing Shipping's obligation to charter and pay charter hire as the maritime contract that it is *despite* the existence of an irrelevant future purchase option.

Geden's final authority (and another decision from a different Circuit that Geden, incorrectly suggests, is controlling law) compels the same result. In *Cary Marine, Inc. v. M/V PAPILLON* an "Owner" who financed his vessel through a bank, chartered that vessel to a "Charterer" with a purchase option exercisable only at the completion of the charter.[35] Notably, the Charterer was neither required nor

---

[34] Id. at *1-2.
[35] *Cary Marine* I, 701 F.Supp. 604, 605 (N.D.Oh. 1988) (hereinafter, "*Cary Marine* (6th Cir.)").

expected to make any charter hire payments, instead assuming the Owner's mortgage payments directly to the bank.[36]   The Charterer then "sold" his interest in the vessel and purchase option to a "Sub-Charterer", who purchased the Charterer's rights by assuming the original mortgage payments.  When the Sub-Charterer ceased making the mortgage payments, the Charterer arrested the vessel pursuant to Admiralty Rule C claiming a lien arising out of the charter party.

Factually, the decision in *Cary Marine* is distinguishable on grounds that make it completely unavailing for Geden's intended purpose: (1) the vessel at issue passed through not one but *two* transactions, neither of which required any payment of charter hire in exchange for the use and enjoyment of the vessel; and (2) the purported charter's term was a mere six months, a period which the Sixth Circuit held could not constitute a legitimate charter prior to an option to purchase.[37]   Here, by contrast, Amazing Shipping/Geden is obligated to pay a considerable sum as daily *charter hire* ($13,500.00), and does not enjoy a purchase option until the fourth year of the Bareboat Charter Party.  To the extent Geden suggests that the *Cary Marine* case is factually determinative, it is simply incorrect.

That is not to say, however, that the *Cary Marine* decision is not instructive here.  As the district court went on to explain, "the main problem with [Charterer's

---

[36] Id.
[37] *Cary Marine (6th Cir.)*, 872 F.2d at 756.

invocation of admiralty jurisdiction] is that the first charter party between [Charterer] and [Owner] has been fully paid.  **A fully paid contract cannot be breached by not paying.**  It is the *second* agreement that has been breached.  This is the sales contract between [Charterer] and [Sub-Charterer]."[38]  Thus, under the jurisprudence of the time (*i.e.*, pre-*Kirby*), the Charterer had no cause of action because the sale agreement was deemed non-maritime, and the "[Owner] has no cause of action here because the *charter* party has not been breached."[39]  The Sixth Circuit affirmed this holding, finding that regardless of anything else admiralty jurisdiction could not be invoked where it was the *sale* agreement that was breached, not the *sub-charter* agreement.  Where the situation is reversed – as it is here – and the *charter* agreement is breached rather than the *sale* agreement, the *Cary Marine* decision confirms the *Parcel Tankers* court's finding that admiralty jurisdiction does exist because the sale and charter obligations are separate and "[a]dmiralty jurisdiction is… properly exercised over contracts to charter a vessel."[40]

Neither Amazing Shipping nor Geden have breached a contract to purchase or sell a vessel; Amazing Shipping fully performed the MOA requiring it to sell the AMAZING to ICON, and the repurchase provision of the Bareboat Charter Party is

---

[38] *Cary Marine, Inc. v. M/V PAPILLON*, 701 F.Supp. 604, 606 (N.D.Oh. 1988) (emphasis added) (hereinafter, "*Cary Marine* (Dist. Ct.)").
[39] *Id.*
[40] *Cary Marine*, *Inc. v. M/V PAPILLON*, 872 F.2d 751 (1989).

years from even becoming  an option.  Geden's verbal and logical sleight of hand in suggesting that the phrase "contingent upon" in the Bareboat Charter Party is synonymous with court's use of the term "inextricably linked" is a fallacy; the only existing promises that are "inextricably linked" are ICON's promise to supply a vessel for charter and Amazing Shipping's promise to pay charter hire.   The maritime obligations in the Bareboat Charter Party are independent from any non-maritime obligations and are therefore enforceable under the Court's admiralty jurisdiction.

### III. Regardless of any other question, jurisdiction is proper as to Geden The Guarantee Agreement is a maritime contract.

Geden's unsupported denials that it is the alter ego and dominant mind behind its subsidiary Defendants are undermined by its motion, in which Geden often argues about the "parties' intent" in two contracts to which Geden is not a party (*i.e.*, the MOA and Bareboat Charter Party).   Indeed, with regards to the only contract to which Geden *is* a party and the only contract Geden has standing to explain (unless we assume alter ego status) – *i.e.,* the Geden Guarantee – there is no doubt that admiralty jurisdiction is proper.

It is well settled that "an agreement to guarantee the performance of a maritime contract is maritime in nature."[41]

---

[41] *E.g., Classic Maritime, Inc. v. Limbugan Makmur SDN BHD*, 646 F.Supp.2d 364 , 369 (S.D.N.Y. 2009); *Compagnie Francaise De Navigation a Vapeur v. Bonnasse,* 19 F.2d 777, 779 (2d Cir.1927); *Stewart & Stevenson Servies, Inc. v. MacMillan*, 1995 WL 10823, *4 (E.D.La. Jan. 11, 1995) ("[W]here the guarantor was the owner of a corporation that entered into a maritime contract, the guaranty agreement falls within the admiralty jurisdiction.").

There is no disputing that Geden fully guaranteed Amazing Shipping's performance of the Bareboat Charter Party.   Crucially, though, the Geden Guarantee also lacks any mention whatsoever of the MOA; it is strictly and exclusively an agreement by Geden to "irrevocably and unconditionally guarantee" the due and punctual observance and performance by the Bareboat Charterer *of all its obligations under the Bareboat Charter*, including, without limitation, the due and punctual payment and discharge of each and every part of the Bareboat Charterer's Liabilities in accordance with the terms of the Bareboat Charter…."

The limitation of Geden's guarantee to Amazing Shipping's Bareboat Charter Party obligations and *not* the MOA obligations is no accident; until Amazing Shipping performed its obligations under the MOA by selling and delivering the Vessel to ICON, the Bareboat Charter Agreement was not and could not have been effective and, therefore, there was nothing for Geden to guarantee.  The result of this feature of the Geden Guarantee is determinative as to the Court's jurisdiction over the Geden Guarantee regardless of Geden's efforts to meld the Bareboat Charter Party with the MOA; because Geden guaranteed performance of the charter provisions *but not the MOA's prior sale provisions*, Geden's guarantee was of strictly maritime obligations and is itself without doubt a maritime contract. Thus, even if Geden's argument on Amazing Shipping's behalf has merit (which it does not), Geden itself would still be subject to the Court's admiralty jurisdiction

on the basis of its breach of the Geden Guarantee, and ICON's attachment of the

M/V HERO as property of Geden's alter ego would still be valid.

## IV. Geden's argument regarding the application of English law is a red herring.

Geden's final argument that ICON's attachment is foreclosed by the parties

selection of an English forum for resolving disputes is a red herring. Legally, it is

will settled that forum selection clauses referring any "dispute" to the jurisdiction

of a foreign court do not prevent a Rule B attachment in the U.S. to obtain security

unless such an intention is clearly expressed.[42]   No such expression exists here.

Contractually, while Geden relies upon the jurisdictional clause of the Bareboat

Charter Agreement, Geden is not a party to that agreement, has no standing to rely

on its provision, and is instead governed by the jurisdictional clause of the Geden

Guarantee which explicitly recognizes ICON's right to proceed by attachment in

this jurisdiction:

> Nothing contained in this Clause shall limit the right of the Owner to commence any proceedings against the Guarantor in any other court of competent jurisdiction nor shall the commencement of any proceedings against the Guarantor in one or more jurisdictions

---

[42] *See, e.g., Polar Shipping Ltd. v. Oriental Shipping Corp.*, 680 F.2d 627, 633 (9h Cir. 1982) ("We hold that in an admiralty action, absent express intent to the contrary, a forum selection clause providing that all disputes under the charter will be determined by a selected foreign court neither precludes a plaintiff from commencing an action in the district court to obtain security by maritime attachment, nor prohibits the district court from ensuring the availability of security adequate to satisfy a favorable judgment by the selected forum."); *Heidmar Trading LLC v. Emirates Trading Agency, LLC*,  2011 WL 5827300 (S.D. Tex. Nov. 18, 2011) (recognizing the holding in *Polar Shipping* but distinguishing cases where the forum selection clause refers to "exclusive jurisdiction" rather than jurisdiction over "disputes").  Here, the Bareboat Charter Party recognizes the *permissive* (but not exclusive) jurisdiction of English courts over "disputes" and provides that ICON "may" bring suit in English courts.

preclude the commencement of any proceedings in any other jurisdiction, whether concurrently or not.[43]

ICON's Rule B attachment is therefore legally and contractually authorized, and Geden's argument to the contrary is meritless, and Geden's tortured manipulation of facts and law to attempt to extricate itself from this court's admiralty jurisdiction, for a debt it admittedly owes, fails.

## <u>CONCLUSION</u>

Because ICON's contract to charter the M/V AMAZING to Amazing Shipping so that the latter could operate her as an ocean-going bulk carrier is decidedly "salty", because the only obligations and agreements that are relevant to ICON's claims are those that arise from the Bareboat Charter Party *as a vessel charter agreement*, and because Geden's sole involvement in this dispute is as the guarantor of exclusively maritime obligations in the form of charterer's liabilities, ICON respectfully urges the Court to deny Geden's Motion to Vacate Attachment and Dismiss Complaint.

Respectfully submitted,

/s/ Derek A. Walker
Derek A. Walker
Texas State Bar No. 00786376
Attorney-in-Charge
Dimitri P. Georgantas
Texas State Bar No. 07805100
Kevin P. Walters
Texas State Bar No. 20818000
Federal I.D. No. 5649

---

[43] Geden Guarantee, ¶ 17.3

815 Walker Street, Suite 953
Houston, Texas 77002
Telephone:  713-546-9800
Facsimile:  713-546-9806

and

Alan R. Davis, LA Bar #31694
2300 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-2300
Telephone: (504) 585-7000
**Attorneys for ICON Amazing LLC**

OF COUNSEL:
CHAFFE McCALL, L.L.P.

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the foregoing pleading was electronically filed via EFC filing with the Clerk with a copy served electronically by the Clerk to all counsel of record on this 7th day of June, 2013.


*/S/ Derek A. Walker*