# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| **ICON AMAZING, LLC** | § | |
| | § | |
| **VERSUS** | § | |
| | § | **C.A. NO. 4:13-CV-01449** |
| **AMAZING SHIPPING LTD.,** | § | |
| **GEDEN HOLDINGS, LTD.** | § | |
| | § | |

## DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE

This hearing need not be continued. Defendants do not need a "more substantial brief" to defeat Plaintiff's twenty-six (26) page response to Defendants' twelve page Motion to Vacate and Dismiss Plaintiff's twelve page Complaint.

## Bill of Sale

Plaintiff's Response Exhibit C (Bill of Sale/Protocols – 4 pages) is Plaintiff's only new exhibit, and as discussed within is welcomed as helpful to Defendants as together with the Term Sheet, Salecon 1993 Memorandum of Agreement ("MOA"), Guarantee and Indemnity, Amortization Tables, and Barecon 2001 vessel sale/finance leaseback charter it establishes there was one closing at which one single,

integrated seven year vessel sale/finance transaction came into existence.[1]

### "Salty" *Kirby* Inapplicable

Plaintiff's only hope, that the Supreme Court decision in *Norfolk S. Ry. Co. v. Kirby*[2] overruled the black letter law that a vessel sale transaction is outside admiralty jurisdiction, fails utterly.

The *Kirby* case was a bill of lading case, not a vessel sale/finance transaction case.[3] In *Kirby*, the primary objective of the parties to the bill of lading contract was to transport goods from Australia to the U.S. East Coast.[4] Here, the primary objective of the parties' interlocking contractual transaction was financing a vessel sale.

Plaintiff's argument, lifted from the lonely and unpersuasive *Kalafrana Shipping Ltd. v. Sea Gull Shipping*[5] case, subsequently was

---

[1] Icon Response Exhibits A-B; D-F (102 pages total) are the same Plaintiff already urged in its Complaint. For example, Complaint Exhibit A = Response Exhibit B; Complaint Exhibit B = Response Exhibit A; Complaint Exhibits C, D and E = Response Exhibits D, E, and F.

The interlinked, conditional, and interdependent instruments and procedure necessary to complete this single, integrated vessel sale transaction are set forth in Icon's Term Sheet, Motion Ex. 3; and carried forward into execution by Motion Ex. 1 (Salecon MOA); Motion Ex. 2 (Barecon 2001); Complaint Ex. C (Guarantee and Indemnity); Motion Ex. 8 (Icon Amortization Tables); and Response Ex. C ( Bill of Sale/Protocols) all agreed to at the Sept. 29/Oct. 1, 2010 closing.

[2] 543 U.S. 14, 125 S.Ct. 385 (2004).
[3] Id.
[4] Id.
[5] 591 F. Supp. 2d 505, 2008 AMC 2409 (S.D.N.Y. 2008).

PD.9762837.1

rejected by *Unicorn Bulk Traders, Ltd. v. Fortune Mar. Enters, Inc.*[6] and other cases in the same District.[7] In the ten years since the *Kirby* decision, Plaintiff's argument has not made headway anywhere else.[8]

## Vessel Sale Finance Transaction

Concerning Icon's role in the vessel sale finance transaction, Icon's Managing Director – Head of Shipping and Offshore Tobias Backer says it best:

> **"One cannot look upon our deals as conventional charters."**[9]

Icon Managing Director Backer is hardly the unsophisticated commercial man Icon now pretends, and his advertised expertise is vessel finance.[10] His bosses, the founders and co-Presidents, Co-CEOs of Icon, are Mike Reisner and Mark Gatto – both experienced lawyers.[11] Icon has its own in-house lawyer, Senior Managing Director and

---

[6]  2009 WL 125751, 2009 AMC 90 (S.D.N.Y. 2009).

[7]  *See Polestar Mar. Ltd. v. Nanjing Ocean Shipping Co.*, 631 F. Supp. 2d 304 (S.D.N.Y. 2009) ("Any argument for considering the sale of a ship a maritime contract existed long before *Kirby*, yet the overwhelming weight of authority, in the Second Circuit and beyond, was that a contract for a sale of a ship is not maritime in nature".) *Vrita Marine Co. Ltd. v. Seagulf Trading LLC*, 572 F. Supp. 2d 411 (S.D.N.Y. 2008); *Exmar Shipping N.V. v. Polar Shipping S.A.*, 2008 WL 3992290 at *3 (S.D.N.Y. Aug. 27, 2008).  R. Force, *The Aftermath of Norfolk Southern Railway v. James N. Kirby, PTY Ltd.: Jurisdiction and Choice-of-Law Issues*, 83 Tul. L. Rev. 1393, 1399-1403 (June, 2009)(ship sale contract still not a maritime contract after *Kirby*, discussing cases).

[8]  Id.

[9]  Motion Exhibit 6, Tobias Backer email dated April 19, 2013 4:59 p.m.

[10]  Reply Exhibit 1, Icon Investments Website, Equipment Finance Funds, Team.

[11]  Id.

Counsel David Verlizzo.[12] Icon's own emails establish Icon's legal team and Icon Counsel Verlizzo were involved in this vessel sale finance dispute from early March, 2013 forward.[13] Accordingly, Backer's description of the transaction as a non-maritime ship sale finance deal merits great weight.[14]

In addition, Icon lists many equipment finance capabilities on its website, including Finance Leases mentioned by Managing Director Backer in his several emails.[15] But nowhere does Icon list conventional maritime charters among its capabilities.[16] In both form and substance this dispute concerns a vessel sale finance transaction.

## <u>Single, Integrated Seven Year Vessel Sale Finance Transaction</u>

In 2007 Defendant Amazing Shipping Ltd. ("Amazing") contracted to build M/V AMAZING in a Chinese shipyard at a cost of $33.5 million. Then came the Great Recession of 2008. When M/V AMAZING was finished and launched, she was not worth her cost. M/V AMAZING could not earn even half the freight income initially contemplated in

---

[12]   Reply Exhibit 2, Icon Investments Website, Leadership.
[13]   Reply Exhibit 3, Icon email March 5, 2013 at 2:18 am; Reply Ex. 4, Icon email April 24, 2013 at 12:38 pm (attaching Icon's "Default Payment/Interest Table" for M/V AMAZING; Icon and its lawyer do not call it the Default charter hire table).
[14]   Id., see also Motion Ex. 5, Icon email dated 2 May 2013 ("Icon's financings of the CENTER, AMAZING, and FANTASTIC are secured financings, <u>not</u> time charter arrangements").
[15]   Reply Exhibit 5, Icon Investments Website, Equipment Finance Funds, Capabilities.
[16]   Id.

PD.9762837.1

2007. Amazing took delivery of the ship in August 2010 from the shipyard, with DVB Bank providing financing of the construction cost.

Amazing needed to refinance and pay off DVB Bank, or it would lose M/V AMAZING. Amazing anticipated the market would improve in the near future, freights would increase, and M/V AMAZING become profitable. Although no bank would take the risk, Plaintiff Icon offered to provide the financing. But unlike a conventional ship mortgage, in which the bank or finance company takes a collateral security interest in a vessel enforceable by a maritime lien during the mortgage loan payment period, Icon proposed a sale/leaseback/sale transaction for M/V AMAZING during a seven-year vessel sale finance period.[17]

As set forth in the cases cited in Defendants' Motion, in this type of vessel finance the initial/intended ultimate owner (Amazing) sells to the financing owner (Icon) who in turn immediately leases back the vessel to the initial/intended ultimate owner for the amortized finance period, which lease/charter back instrument has a balloon payment purchase obligation at the end of the finance period by which the financing owner sells the vessel back to the initial/ultimate owner.

---

[17]  See Motion Ex. 3, Icon Term Sheet dated July 28, 2010 (outlining the ship sale finance transaction); see also generally, T.Schoenbaum, Admiralty and Maritime Law (3d ed.) Vol. 1, section 9-5 at pp. 516-521 (Preferred Ship Mortgages).

PD.9762837.1

It is all one transaction, and the contracts to accomplish same all are executed and come into force at the same time, at the closing, as evidenced by the Saleform 1993 MOA, the Barecon 2001 with Vessel Purchase Obligation, the Guarantee and Indemnity, and the Bill of Sale and Protocols dated September 29/Oct. 1, 2010.[18]  Indeed, Defendant Amazing would not even have considered entering into this vessel sale finance transaction with Icon if the transaction did not require Icon to lease/charter back the vessel to Amazing, and Amazing to own the vessel at the end of the finance period.

Per the transaction, Icon did not give $33.5 million to Defendants to spend and waste as suggested in Plaintiff's Response. The funds from the October 2010 first stage sale were used to pay off DVB Bank and shareholder loans. Per the second stage of the vessel sale refinancing transaction, Amazing was to buy back M/V AMAZING from Icon month by month for the next seven years. Every single payment from October 1, 2010 forward counts toward the sale, as evidenced by Icon's principal and interest amortization table.[19]

---

[18]  Motion Ex. 1 (Saleform MOA); Ex. 2 (Barecon 2001); Complaint Ex. C, Response Ex. D (Guarantee and Indemnity); Response Ex. C (Bill of Sale and Protocols).

[19]  Motion Ex. 8, Icon's Amortization Table showing M/V AMAZING Vessel Sale Finance payments from Oct. 1, 2010 until Oct. 1, 2017 Sale completion/Balloon Payment day.

PD.9762837.1

Moreover, every single vessel sale finance monthly payment was guaranteed by Defendant Geden Holdings, Ltd., ("Geden") including not just the amortized $33 million in monthly payments over seven years, but also and especially important to Icon, the third stage $21,500,000 Balloon Payment Purchase Obligation at the end of the finance period.[20]

If this had been just a conventional stand-alone maritime bareboat charter party at market rates, Amazing would not have been paying $13,500 per day. As Icon admits in its Response, even today M/V AMAZING's total earnings are only 65% of $13,500 per day, less than $9,000 per day.[21]  Conventional bareboat charter hire is intended to be less than time sub-charter and voyage sub-charter hire or freights, otherwise the bareboat charterer would not earn any money. Here, the monthly payments were not determined by the charter market but by the precise amount in principal and interest to amortize the vessel sale finance leaseback charter loan.[22]

Icon, Amazing, and Geden never contemplated the Great Recession would last this long; they all hoped that by 2011 or early 2012 the market would improve and the M/V AMAZING sale/finance

---

[20]   Motion Ex. 8 (Icon Amortization Table); Icon Complaint Ex. C (Guarantee and Indemnitee).
[21]   Icon Response at p. 9.
[22]   Motion Ex. 8, Icon Amortization Table.

transaction would work as contemplated on closing September 29/October 1, 2010.

Contrary to Icon's assertions of fraud, please note Icon admits Defendant Amazing has turned over all the charter hire it has earned to Icon, and has arranged for M/V AMAZING's conventional maritime charterers to pay Icon directly.[23] How could Amazing possibly be more transparent? Amazing presently is earning nothing – all the vessel income is going directly to Icon.

## Barecon 2001 non-maritime
## vessel sale/finance leaseback charter

Icon improperly and unsuccessfully attempts to "pick apart" the interlocking instruments of this single, integrated vessel sale finance transaction and argues this is just a regular maritime stand-alone conventional bareboat charter.

The terms of a conventional, stand-alone bareboat charter for a new-build vessel like M/V AMAZING are set forth in the nine (9) pages of the Barecon 2001 sections Part II and Part III.[24] That is all that is needed.

---

[23] Id.
[24] Motion Ex. 2, Barecon 2001 Part II and Part III.

But because this is not a conventional, stand-alone bareboat charter, Icon *deleted* about half the regular terms, and then *added* thirty five (35) pages of Rider Clauses which are in fact vessel finance clauses.

For example, a maritime conventional, stand-alone bareboat charter has a Redelivery Clause in which the charterer at the end of the charter term gives the vessel back to the owner and walks away.[25] But a non-maritime vessel sale/finance charter party has a Purchase Obligation Clause.[26] And here, in this non-maritime vessel sale/finance leaseback charter is the Rider Clause 51 $21,500,000 USD "Purchase Obligation".[27]

Likewise, nowhere in a maritime conventional stand-alone bareboat charter is there any requirement to "true up" Loan to Value ("LTV") and increase monthly payments if the vessel value falls.[28] Such LTV Clause is a typical non-maritime ship finance contract term that a lender employs to protect the value of the substantial asset that is the subject of the loan.

---

[25]   Id. At Part II, Clause 45.
[26]   See Motion Ex. 2, Barecon 2001 Parts II and III.
[27]   Id. at Rider Clause 51.
[28]   Id. at Parts II and III.

And that is exactly what we find in Rider Clause 40, underscoring the non-maritime nature of this vessel sale/finance leaseback charter.[29]

Indeed, the largest element of Icon's claim here is the non-maritime Loan to Value element totaling $2,910,109.00 based upon the falling value of M/V AMAZING.[30]

Stated another way, is Icon offering Defendants to void and waive the non-maritime $21,500,000 Vessel Purchase Obligation and $2,910,109.00 LTV claims? If not, Icon is agreeing that the Barecon 2001 is inseparable and cannot be broken apart piecemeal and still accomplish all the parties' objectives, and is a non-maritime vessel sale/finance charter.

That being so, Defendant Geden's guarantee of each and every vessel sale finance payment in this non-maritime vessel sale/finance charter is also a non-maritime contract.

## CONCLUSION

There is no subject matter jurisdiction over this non-maritime case. No pertinent and relevant vessel sale/finance leaseback charter case supports Icon's position. Icon is reduced to urging this court to

---

[29] Id. at Rider Clause 40.
[30] Complaint, at p. 5.

PD.9762837.1

extend the *Kirby* analysis to vessel sales, which has not been successful in any other Circuit, and unsuccessfully attempts to distinguish the several vessel sale/finance leaseback charter cases establishing Defendants' position. The Rule B attachment of M/T HERO was improper and should be vacated, and Icon's Complaint dismissed.

Respectfully submitted,

Marc G. Matthews
Texas Bar #24055921
Federal ID No. 705809
700 Louisiana Street, Suite 2600
Houston, Texas 77002
Telephone: (713) 626-1386
Telecopier: (713) 626-1388
marc.matthews@phelps.com

**ATTORNEY-IN-CHARGE FOR DEFENDANTS AMAZING SHIPPING LTD. AND GEDEN HOLDINGS, LTD.**

PD.9762837.1

OF COUNSEL:

**PHELPS DUNBAR LLP**

Brian D. Wallace (LA Bar #17191; Fed. ID 205890)

wallaceb@phelps.com

Patricia Hair (TX Bar #8713500; Fed. ID 2960)

hairp@phelps.com

Michael M. Butterworth (LA Bar #21265; Admitted Pro Hac Vice)

butterwm@phelps.com


and

Watson, Farley, and Williams (New York) LLP

100 Park Avenue, 31st Floor

New York, New York 10017

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was electronically filed with the Clerk, with a copy served electronically by the Clerk or by the undersigned via certified mail, return receipt requested, on this the 10th day of June, 2013 upon all counsel of record.

Marc G. Matthews