UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ICON AMAZING, LLC | § § § | |
| Plaintiff, | § § | |
| V. | § § | Civil Action No. 4:13-cv-01449 |
| AMAZING SHIPPING, LTD. and GEDEN HOLDINGS, LTD. | § § § | Admiralty Rule 9(h) |
| Defendants. | § § | |

**PLAINTIFF'S REPLY TO DEFENDANTS RESPONSE IN OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION TO EXTEND AND/OR CLARIFY THE STAY ORDER OF MOTION AND ORDER TO VACATE ATTACHMENT AND FOR AN ORDER COMPELLING THE VESSEL TO RETURN AND/OR REMAIN IN THE JURISDICTION PENDING ISSUANCE OF WRITTEN REASONS AND APPEAL TO THE FIFTH CIRCUIT COURT**

ICON Amazing, LLC ("ICON") replies to Defendants' Response to ICON's Emergency Motion to Extend Stay.

The key to Geden's egregious conduct is the fact that after the U.S. Marshal released the vessel from attachment, Judge Hughes contacted Geden's counsel and

2084565-1

obtained an agreement from them that the vessel would not leave the jurisdiction. ICON's conversations with the U.S. Marshal had nothing to do with Geden's conversation with Judge Hughes. Not only was undersigned counsel not a participant in that conversation, but what ICON said, or could have said to the U.S. Marshal was irrelevant because ICON had no power to dictate to the U.S. Marshal to do or not do anything. ICON's consent or lack of consent would have no impact on the Marshal's ability to release the vessel and much less on any later representation by Geden to Judge Hughes regarding movement of the vessel. Therefore, the true evolution and conclusion of these facts is that Geden moved the vessel outside of the jurisdiction in spite of representations to a federal district judge that it would not. Geden attempts to mix ICON's alleged involvement (there was none) with the release of the vessel with Geden's representations to Judge Hughes, <u>after</u> the release of the vessel. The two have little to do with each other.

First, despite Geden's use of the loaded terms more than a dozen times in its Response, counsel for ICON did not ever, in any way, "instruct" or "authorize" the U.S. Marshal to do anything at all (and even if it had not, that fact would be <u>irrelevant</u> to the later representations made to Judge Hughes). As the emails Defendants submit plainly show, counsel did nothing more than "attach a copy of Judge Hittner's Order (Doc 36) granting Defendants' opposed motion to vacate

attachment and Dismiss Complaint."[1] In fact, Counsel further indicated that he would <u>not</u> forward the form releasing the Vessel ("USM 285") until the following day and, minutes later, followed up with a second email to the U.S. Marshal advising that in fact ICON was moving to have the effect of the Order Vacating Attachment stayed.

Second, and again contrary to Geden's representations, counsel for ICON did not "release" the vessel from seizure. Notably, in an email on June 12, 2013, the U.S. Marshal's office wrote that it had released the vessel at 5:15 p.m. on the previous evening "based on the court order" – not based on anything ICON said, did, "authorized", or "instructed".[2]

Third, though Geden now denies representing to Judge Hughes that the vessel would remain within the jurisdiction overnight, the sequence of events on the evening of June 11 make it fairly evident that such a representation was indeed made. At 6:29 p.m. (more than an hour after the vessel was released) ICON counsel received a call from Judge Hughes's chambers advising that Judge Hughes was in his office awaiting ICON's Emergency Motion to Stay. At 6:41 p.m., while in the process of filing ICON's Emergency Motion to Stay and Motion to Expedite, counsel received a call from Judge Hughes himself indicating that based on Geden counsel's assurances regarding the vessel's sailing schedule he would

---

[1] Email from Kevin Walters dated June 11, 2013, attached as Exhibit 2 to Defendants' Response (Rec. Doc. 44-2).

take the motion up on an expedited basis the following morning. ICON finds it utterly unbelievable that Judge Hughes would mistake Geden counsel's message or that, having waited in chambers until 6:41 p.m. to rule on an emergency motion that he understood would be potentially mooted if it were not addressed before the vessel sailed, decided to postpone consideration of the motion until the following day without any actual assurance from Geden counsel that the vessel would still be within the Court's jurisdiction at that time. By the time of the discussion with Judge Hughes the vessel had <u>already</u> been released by the Marshal so it could only be restrained by a voluntary agreement of Geden and its counsel (and <u>not</u> by any post release supposed action of ICON's).

Despite Geden's accusatory Response, it seems that Judge Hughes understood that the HERO would not sail from the jurisdiction overnight, that ICON never "authorized" or "instructed" the U.S. Marshal to "release" the vessel, and that in light of the Court's order and the necessary (albeit brief) delay in obtaining a stay, the only thing keeping the HERO within the Southern District of Texas on the evening of June 11, 2013, was Geden counsel's assurance that it would not sail away.

ICON respectfully urges the Court to grant the relief requested in ICON's Emergency Motion to extend the stay and/or compel Geden to return the vessel to

---

[2] Email from Patricia Lopez dated June 12, 2013, attached as Exhibit A.

the jurisdiction – a fact which should not be difficult for Geden as, contrary to its suggestion that the HERO has sailed for the Bahamas, publicly available vessel tracking resources show that she is sitting at anchor only a few miles beyond the Court's jurisdictional reach (albeit with her satellite beacon turned off in hopes of "hiding behind the log").[3] There should be no reason why Geden should not comply with its original agreement not to allow the vessel to sail and to bring it back to the jurisdiction. The vessel <u>purposely</u> moved from the outer anchorage (8.8 miles out and within the limits of the court's jurisdiction) to approximately 20 miles out. It has sat at that location since Tuesday night. To move from 8.8 miles to 20 miles required mustering the crew, firing up the engines, and other expense. In these times of economic hardship for the shipping industry it makes no sense for a ship to move from a safe anchorage location where it has been for weeks awaiting orders, another 10 miles out to sit again awaiting orders. The sole purpose of the ship's movement was to evade this court's jurisdiction and to ignore Judge Hughes' order and the potential of a stay of the motion to vacate (as happened).

Finally, ICON respectfully avers that a stay pending appeal is warranted here because there is strong authority in the form of the Fifth Circuit's opinion in *Jack*

---

[3] *See* MarineTraffic.org vessel position report, attached as Exhibit B. If it wishes, the Court may view the M/V HERO's position at http://www.marinetraffic.com/ais/shipdetails.aspx?MMSI=248927000 by clicking on the Latitude/Longitude or "Map" link, which shows the vessel's current position or, when her satellite beacon has been deactivated, last recorded position.

*Nielson, Inc. v. Tug PEGGY* that the Bareboat Charter Party at issue in this case should properly have been characterized as a maritime contract, and thus a strong likelihood that ICON will prevail on appeal.[4] In *Jack Nielson*, the Fifth Circuit considered a contract nearly identical to the one that ICON and Amazing Shipping entered into: a bareboat charter agreement that contained a purchase option throughout the charter's term and a purchase <u>obligation</u> at the charter's conclusion. In denying the charterer's argument that the contract should be treated as a disguised sale and, hence, not subject to the court's admiralty jurisdiction, the Fifth Circuit recognized that bareboat charter parties with purchase obligations were indeed a maritime contracts where "the charterer made no offer to purchase the vessels", "the total monthly payments were considerably less than the stipulated price", and "the vessels [were] expos[ed] for five years to the hazards of the sea" before the repurchase obligation would become effective.[5] The Fifth Circuit therefore concluded in a suit based on nonpayment of charter hire that "the provisions relating to the bareboat charter were maritime in nature and severable from the unexecuted options and the charter's agreement to purchase on the termination of the charter."[6]

Because there is good reason to believe that the Fifth Circuit may overturn the Court's decision based on its prior ruling in *Jack Nielson*, and because ICON's

---

[4] *Jack Nielson, Inc. v. Tug Peggy*, 428 F.2d 54, 60-61 (5th Cir. 1970).

right to an effective appeal hinges on the Court's extending its stay beyond the moment that written reasons are issued and ordering Geden to make up for the prejudice it has caused by removing the Vessel from the jurisdiction in violation of its assurance not to do so, ICON respectfully urges the Court to (1) extend the effect of its prior stay through ICON's filing of a Fifth Circuit Appeal and (2) order Geden to either return the Vessel to the jurisdiction or post substitute security.

Respectfully submitted,

/s/ Derek A. Walker
Derek A. Walker
Texas State Bar No. 00786376
Attorney-in-Charge
Kevin P. Walters
Texas State Bar No. 20818000
Federal I.D. No. 5649
815 Walker Street, Suite 953
Houston, Texas 77002
Telephone: 713-546-9800
Facsimile: 713-546-9806

and

Alan R. Davis, LA Bar #31694
2300 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-2300
Telephone: (504) 585-7000
**Attorneys for ICON Amazing LLC**

OF COUNSEL:
CHAFFE McCALL, L.L.P.

---

[5] *Id.*
[6] *Id.*

## **CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing pleading was electronically filed via EFC filing with the Clerk with a copy served electronically by the Clerk to all counsel of record on this 14th day of June, 2013.

*/S/ Derek A. Walker*